## UNITED STATES v. LENORE.

(District Court, D. North Dakota. October 1, 1913.)

1. COURTS (§ 509*)—FEDERAL COURTS—JURISDICTION—COMITY—"ILLEGALLY PROCURED."

Where a state court of competent jurisdiction overruled an objection to a petition for naturalization that it was not properly signed, in that it was signed by the petitioner's mark only, and thereupon granted the petition, a federal court of concurrent jurisdiction would not take jurisdiction of a suit by the United States to set aside the decree on the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

207 F.—55

ground that it was "illegally procured," since the defect, if any, was error only, and not illegality, and could be corrected by appeal or writ of error.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1364–1371; Dec. Dig. § 509.*]

2. ALIENS (§ 68*)—CIRCUIT COURT OF APPEALS—JURISDICTION—NATURALIZATION PROCEEDINGS—REVIEW—"CASE."

Act March 3, 1891, c. 517, § 6, 26 Stat. 828 (U. S. Comp. St. 1901, p. 549), provides that the Circuit Courts of Appeals shall exercise jurisdiction to review by appeal or writ of error final decisions of the District and Circuit Courts in all cases other than those provided in the preceding sections of the act, unless otherwise provided by law, and the judgments and decrees of the Circuit Court of Appeals shall be final in all cases in which the jurisdiction is dependent entirely on the opposite parties to the suit or controversy being aliens and citizens of the United States or citizens of different states, etc. *Held*, that the word "case," as so used, was intended to include all claims of litigants brought before the courts for determination by the regular established proceedings of law or custom for the protection or enforcement of rights, or the prevention, redress, or punishment of wrongs, and therefore includes a naturalization proceeding, so that errors occurring therein were reviewable by appeal or writ of error to the Circuit Court of Appeals.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 138–145; Dec. Dig. § 68.*

For other definitions, see Words and Phrases, vol. 1, pp. 985–993; vol. 8, p. 7597.]

In Equity. Suit by the United States against Elizabeth Lenore to cancel a certificate of citizenship alleged to have been illegally procured. Bill dismissed.

Edward Engerud, U. S. Dist. Atty., and M. A. Hildreth, Asst. U. S. Dist. Atty., both of Fargo, N. D.

Clement L. Waldron, of Beach, N. D., for defendant.

AMIDON, District Judge. This is a suit in equity, brought by the United States under section 15 of the act of June 29, 1906 (34 Stat. 596, 601, c. 3592 [U. S. Comp. St. Supp. 1911, p. 537]), to cancel a certificate of citizenship granted to the defendant by the district court of the Tenth judicial district of North Dakota, sitting in the county of Billings. The statute authorizes such a suit whenever the certificate is obtained by fraud or "illegally procured." The bill charges that the petition presented to the state court by the defendant for her naturalization was signed by her mark, and not "in her own handwriting," as required by the statute. This charge was admitted by the answer, and was amply shown by the evidence adduced at the trial of the present suit. It also appeared from the pleadings that at the hearing of defendant's petition for her naturalization the government was represented by counsel, who participated in the examination of witnesses, and specifically objected to the granting of the certificate because the petition was not properly signed. This objection was heard by the court, considered, and overruled.

[1] I am asked to cancel the certificate of citizenship, not upon the ground that it was obtained by fraud, but upon the ground that it was

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"illegally procured"; the illegality consisting wholly, as is charged, in the ruling of the state court above mentioned. The extraordinary character of such a decree at once challenges notice. By it one court is called upon to set aside the judgment of another court of co-ordinate jurisdiction because of a difference of opinion as to the interpretation of a statute. It should also be noted that this jurisdiction, if it exists, is not confined to the federal district courts. The bill for cancellation of a certificate of citizenship may be presented in any court "having jurisdiction to naturalize aliens in the judicial district in which the naturalized citizen may reside at the time of bringing the suit." It results that, if this court may cancel a certificate of citizenship issued by the state court because of a difference of opinion in regard to a matter of law, the state court may be called upon in the next suit to exercise the same power with respect to a certificate of citizenship issued out of this court. Not only that, but courts of different judicial districts and of different states may each set aside the solemn judgments of other courts of the same state or of other states, entered after full hearing, because of a difference of opinion as to the law. As the statute requires these suits to be brought by the United States attorney, it will probably happen, as a general thing, that he will file the bill in the court to which he is officially attached. It will thus become the duty of federal courts to set aside the judgment of state courts of co-ordinate jurisdiction, and send their orders to the clerks of those courts, commanding them to cancel records which they made pursuant to the judgment of the court to which they are attached. Two serious consequences must result from the exercise of this jurisdiction: First, it will produce a babel of conflicting judgments among courts of co-ordinate jurisdiction, and tend directly to destroy respect for the courts, and also to destroy that good will which should always exist among courts of co-ordinate jurisdiction. Second, it will tend to break down that comity which has been the bond of peace between federal and state courts exercising co-ordinate jurisdiction in the same territory. Results so unfortunate can be justified only by imperative and unequivocal language.

A brief history of the causes which led to the passage of the act of 1906 will, in my judgment, show that Congress never intended to confer the jurisdiction which is here invoked.

In 1902 fraudulent and illegal practices in the naturalization of aliens were discovered in the city of St. Louis, Mo. Some of these misdoings are recounted in the opinion in Dolan v. United States, 133 Fed. 440, 69 C. C. A. 274. The prosecutions which resulted in the Eastern district of Missouri led to investigations in other cities, and the discovery of many fraudulent and illegal practices in the issuance of certificates of naturalization. In some cases perjury and subornation of perjury were resorted to for the purpose of deceiving the court and obtaining certificates for aliens who had not resided in the country for the requisite time. In other cases foreigners were marched into the court in large companies, and the oath of allegiance administered to the whole company, although many of them were unable either to speak or understand the language that was used. Two persons

made the ordinary witness' oaths for the whole company. Upon this sham and spurious proceeding certificates were issued. · In other cases clerks of court issued such certificates without any proceeding in court whatever, and fabricated a judicial record to support the certificates. It was even discovered that some clerks were engaged in a regular brokerage business in certificates of naturalization. This practice went so far that some of these certificates were sold to aliens residing abroad, who had never been in the United States, in order that they might be used for fraudulent purposes, both with respect to foreign countries and this country. The result of these investigations was gathered together in an elaborate report, which was presented to Congress and resulted in the passage of the act of 1906. Congressional Record, vol. 40, part of page 7036; House Documents, vol. 44. (Miscellaneous), 59th Congress, 1st Session. It will be seen that the mischievous practices which the statute was intended to correct fell into two general classes: First, the obtaining of certificates of naturalization through the deception of the court by means of perjury and subornation of perjury. Such practices were fraudulent, and certificates obtained thereby are accurately described as having been "obtained by fraud." This had been familiar law, not only in the case of naturalization certificates, but of patents for public land. Second, false and spurious certificates were obtained without any judicial proceeding whatever, or by a proceeding in court which was itself sham and spurious. Certificates thus obtained are accurately described as having been "illegally procured." Neither the debates in Congress nor the report of the investigation which was laid before Congress contain any suggestion that any other evils were intended to be dealt with, or that the phrase "illegally procured" was intended to set one court to annulling the judgments of another court of co-ordinate jurisdiction because of a difference of opinion in regard to a matter of law. To say that a certificate which is issued pursuant to a full hearing in court is "illegally procured," if any error occurs in the proceeding, would be a wide departure from the language which courts have been accustomed to use in referring to judicial error. "Illegally procured" imports, not an error of court, but willful misconduct on the part of the holder of the certificate or those who have acted in his behalf. The history of the statute shows that its language can be given full effect according to the mischief that was present to the thought of Congress, without upsetting the whole judicial system that has hitherto obtained among courts of co-ordinate jurisdiction. I am, therefore, unable to follow the decisions in United States v. Meyer (D. C.) 170 Fed. 983, United States v. Plaistow (D. C.) 189 Fed. 1007, and United States v. Schurr (D. C.) 163 Fed. 648. I concur in the view expressed in United States v. Luria (D. C.) 184 Fed. 643, 646, that " 'illegally procured' does not mean that the certificate was issued through error of law." Errors of courts, committed in the honest exercise of their jurisdiction under the naturalization laws, must be corrected the same as in other cases by appeal or writ of error. Such a method of review has been recognized in the Circuit Courts of Appeal of most of the circuits. United States v. Balsara, 180 Fed. 694, 103 C. C. A. 660 (2d Circuit); Bessho

v. United States, 178 Fed. 245, 101 C. C. A. 605 (4th Circuit); United States v. Poslusny, 179 Fed. 836, 103 C. C. A. 324 (2d Circuit); United States v. Martorana, 171 Fed. 397, 96 C. C. A. 353 (3d Circuit); United States v. Doyle, 179 Fed. 687, 103 C. C. A. 233 (7th Circuit); United States v. Ojala, 182 Fed. 51, 104 C. C. A. 491 (8th Circuit).

[2] In United States v. Dolla, 177 Fed. 101, 100 C. C. A. 521, 21 Ann. Cas. 665, it was held by the Circuit Court of Appeals of the Fifth Circuit that the proceeding for the naturalization of an alien did not constitute "a case" so as to permit a review by appeal or writ of error in the Circuit Court of Appeals. This decision has never been cited, and seems to be out of accord with the practice in other circuits. In my judgment it proceeds upon an erroneous interpretation of the statute. The hearing in court by which aliens are naturalized must be an exercise of judicial power. Otherwise Congress could not confer that authority upon federal courts. Muskrat v. United States, 219 U. S. 346, 31 Sup. Ct. 250, 55 L. Ed. 246. Again, it has been uniformly held that judicial power can be exercised in the federal courts only when the proceeding takes the form of "a case" or "controversy" within the meaning of those terms as used in the judicial article of the Constitution. Of these terms the word "case" is the more comprehensive. The language of Mr. Justice Field in the case of In re Pacific Railway Commission (C. C.) 32 Fed. 241, 255, has been frequently quoted and approved by the Supreme Court, and seems the most accurate statement which has yet been made on the subject:

"The judicial article of the Constitution mentions cases and controversies. The term 'controversies,' if distinguishable at all from 'cases,' is so in that it is less comprehensive than the latter, and includes only suits of a civil nature. Chisholm v. Georgia, 2 Dall. 431, 432 [1 L. Ed. 440]; 1 Tuck. Bl. Comm. App. 420, 421. By cases and controversies are intended the claims of litigants brought before the courts for determination by such regular proceedings as are established by law or custom for the protection or enforcement of rights, or the prevention, redress, or punishment of wrongs. Whenever the claim of a party under the Constitution, laws, or treaties of the United States takes such a form that the judicial power is capable of acting upon it, then it has become a case. The term implies the existence of present or possible adverse parties whose contentions are submitted to the court for adjudication."

The decision in the Fifth Circuit seems to me to be in conflict with the established doctrine of the Supreme Court. In Fong Yue Ting v. United States, 149 U. S. 698, 728, 13 Sup. Ct. 1016, 1028 (37 L. Ed. 905), the question involved was the deportation of a Chinaman from the United States under the law of 1892; the case having many of the administrative features which in some countries attach to the naturalization of aliens. Under the statute, after a Chinaman had been arrested, it was made the duty of the officer to bring him before a United States court, where the question of his right to be in the country was to be summarily heard without pleadings. Of such a proceeding the court says:

"When, in the form prescribed by law, the executive officer, acting in behalf of the United States, brings the Chinese laborer before the judge, in order that he may be heard, and the facts upon which depends his right to remain in the country be decided, a case is duly submitted to the judicial power;

for here are all the elements of a civil case—a complainant, a defendant and a judge—actor, reus, et judex."

Speaking of the extent of the judicial power conferred by the Constitution, Chief Justice Marshall said, in Osborn v. United States Bank, 9 Wheat. 738–819 [6 L. Ed. 204]:

"This clause enables the judicial department to receive jurisdiction to the full extent of the Constitution, laws, and treaties of the United States, when any question respecting them *shall assume such a form that the judicial power is capable of acting on it.* That power is capable of acting only when the subject is submitted to it, by a party who asserts his rights in the form prescribed by law. It then becomes a case, and the Constitution declares that the judicial power shall extend to all cases arising under the Constitution, laws, and treaties of the United States."

In Smith v. Adams, 130 U. S. 167, 173, 9 Sup. Ct. 566, 568 (32 L. Ed. 895), Mr. Justice Field, speaking for the court, used the following accurate language:

"Whenever the claim or contention of a party takes such a form that the judicial power is capable of acting upon it, then it has become a case or controversy"

—within the meaning of those terms as used in the federal Constitution. See, also, Interstate Commerce Commission v. Brimson, 154 U. S. 447, 475, 155 U. S. 3, 14 Sup. Ct. 1125, 15 Sup. Ct. 19, 38 L. Ed. 1047, 39 L. Ed. 49, et seq., where the cases are fully reviewed.

The term "case," in the Court of Appeals Act, clearly has the same significance as in the federal Constitution. Under the statute of 1906 the naturalization of an alien has all the qualities of a case. It proceeds upon petition and notice. The government is entitled to be present, by its counsel, and examine the petitioner and his witnesses, and to produce other witnesses. The Supreme Court in the case of Johannessen v. United States, 225 U. S. 227, 237, 32 Sup. Ct. 613, 56 L. Ed. 1066, clearly indicates that the proceeding under this statute has the qualities of a case.

The act of 1906 vests jurisdiction to naturalize aliens in the highest courts of the state and nation exercising original jurisdiction. This authority ought not to be construed as so special and restricted as to deprive those courts of all discretion as to matters of procedure. The statute clearly defines the qualifications which aliens must possess in order to entitle them to citizenship. There are also numerous provisions defining in detail the procedure and pleadings which shall be adopted. These latter parts of the act are simply intended to prevent the admission to citizenship of those who do not possess the qualifications stated in the act. They are matters of procedure, and ought to be treated as other matters of procedure are in those courts. This is especially true when a court of co-ordinate jurisdiction is asked to set aside a decree. If the court entering the decree has jurisdiction its certificate certainly ought not to be canceled for failure to follow strictly all the details of the statute relating to procedure. The case of United States v. Stoller (D. C.) 180 Fed. 910, seems to me sound and to contain many sensible observations on this subject.

When a certificate of naturalization is obtained by fraud, or is ille-

gally procured in the sense that it has been issued without authority of law, and is in effect false and spurious, a suit in equity may be maintained for its cancellation.   This has been fully established in the federal courts in the case of patents for land obtained under similar circumstances.   Such a suit is not intended to correct an error of court, but to defeat the fraud of the litigant.   But when a certificate is issued as the result of a judicial hearing in a good-faith attempt to exercise the jurisdiction conferred by the act of Congress, it is not open to attack in another court of co-ordinate jurisdiction simply by reason of alleged errors which may have occurred in the court pursuant to whose judgment the certificate was issued.   Errors of that kind can properly be reached only by appeal or writ of error.

The statute authorizes a suit to cancel a certificate only "on the ground of fraud," or "on the ground that such certificate was illegally procured."   In my judgment the certificate here involved falls under neither of these classes.   The bill must therefore be dismissed, and it is so ordered.