## In re HAAS.

(District Court, N. D. Texas, Dallas Division. July 16, 1917.)

1. ALIENS ⚸61—RIGHT TO NATURALIZATION—ALIEN ENEMIES—"TIME OF HIS APPLICATION."

Under Rev. St. § 2171 (Comp. St. 1916, § 4362), providing that no alien, who is a native citizen or subject or denizen of any country with which the United States are at war at the time of his application, shall be then admitted to become a citizen, a German citizen, whose petition for naturalization was filed prior to the declaration of war by Congress, is not entitled to be naturalized during the continuance of the war, as "the time of his application" does not mean the date of the filing of the petition, but the whole intervening time from the filing of the petition until the petition is passed on, while "then" does not refer alone to the time of the application, but to the state of war existing at the time of the filing of the petition and the court's action thereon.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 119–122.]

2. ALIENS ⚸68—NATURALIZATION—RENOUNCING ALLEGIANCE TO FORMER GOVERNMENT.

An applicant for naturalization must without reservation absolutely and forever renounce allegiance to his former government, and no divided allegiance is tolerated by the law.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 138–145.]

3. ALIENS ⚸61—RIGHT TO NATURALIZATION—ALIEN ENEMIES.

In view of the recent German statute, authorizing German citizens to retain their citizenship when acquiring foreign citizenship, any doubt as to the right of German citizens to naturalization during the war should be construed against their admission.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 119–122.]

Application by Rudolph Haas for naturalization. Application denied without prejudice.

JACK, District Judge. [1] It is provided by section 2171 of the Revised Statutes (Comp. St. 1916, § 4362) that:

"No alien who is a native citizen or subject, or a denizen of any country, state, or sovereignty with which the United States are at war, at the time of his application, shall be then admitted to become a citizen of the United States."

The petition of the applicant was filed prior to April 6, 1917, the date of the resolution of Congress declaring a state of war between the United States and Germany, of which latter country he is a citizen. He possesses the necessary qualifications, and his right to natural-

ization is brought into question only by the fact that the United States is now at war with the German Empire. If "the time of his application" be construed to mean the date that his petition was filed, then he would not fall within the prohibition of the statute. On the other hand, if by "the time of his application" is meant the time during which he is an applicant, that is to say, the intervening time from the date of the filing of his petition until the date the petition is passed on, then he would fall within the prohibition of the statute.

The court is of the opinion that "the time of his application" is the time during which his application is pending. He is an applicant for naturalization from the date of the filing of his petition until it is finally acted upon, and the time during which he is an applicant is "the time of his application." This provision was originally contained in the act of April 14, 1802 (2 Stat. 153, c. 28, § 1), and from that date until the passage of the act of June 29, 1906 (34 Stat. 596, c. 3592), the petition for naturalization was filed and acted upon the same day. By the act of 1906 it was provided that at least 90 days should elapse from the date of the filing of the petition until the hearing thereon. Thus, under the provisions of the original act of 1802, embodied in the present law, no alien whose country was at war with the United States at the time his application was acted upon by the court could be "then admitted to become a citizen of the United States." The word "then" does not refer alone to the time of his application, but refers likewise to the state of war existing at the time of the filing of the application, and the court's action thereon. Under the original act of 1802, it is clear that an alien could not be naturalized if his country at the time his application was passed upon was at war with the United States. The purpose of the act of 1906, changing the original law so as to require 90 days' delay before taking action on the petition, was evidently to provide greater safeguards against the naturalization of undesirable aliens, and it certainly could not have been intended by Congress to thereby change the law, so as to permit the naturalization of an alien whose country at the time of the hearing was at war with the United States. Such a construction would be contrary to the very purpose and spirit of the law.

[2] There is a recent statute in Germany, which went into effect January 1, 1914, some of the provisions of which are wholly contrary to, and at variance with, our ideas of the obligations of a naturalized citizen. No divided allegiance is tolerated by our law. The applicant must, without reservation, absolutely and forever renounce allegiance to his own government. One of the provisions of this German statute is as follows:

"Citizenship is not lost by one who before acquiring foreign citizenship has secured on application the written consent of the competent authorities of his home state to retain his citizenship. Before this consent is given the German consul is to be heard.

"The Imperial Chancellor may order, with the consent of the Federal Council, that persons who desire to acquire citizenship in a specified foreign country, may not be granted the consent provided for in paragraph 2."

In justice to the applicant in this instance, it should be said that the evidence does not show that he made such application to the au-

thoiities of his own government, and that he is apparently, in every respect, in good faith.

[3] The existence of such a statute, however, shows the necessity of great care and caution in the naturalization of German citizens during the war. Any doubt as to the meaning of our law should be construed against their admission, particularly so as such construction does not finally deny, but only temporarily delays, their naturalization. I regret that I cannot, under my view of the law, conform to the opinion of the Circuit Court of Appeals, Second Circuit, in the case of the United States v. Meyer, 241 Fed. 305, rendered April 12, 1917, by a divided court. The Circuit Court of Appeals for this Circuit has not yet passed on the question.

It is ordered that the application of Rudolph Haas, for the present, be denied, and the case continued, without prejudice, pending the termination of the war with Germany.