### GRAHL v. UNITED STATES.

(Circuit Court of Appeals, Seventh Circuit. October 7, 1919.)

No. 2608.

1. ALIENS ⊙⟶71½, New, vol. 7 Key-No. Series—CANCELLATION OF CERTIFICATE OF NATURALIZATION ISSUED TO ALIEN ENEMY; "ILLEGALLY."

Under Naturalization Act June 29. 1906, § 15 (Comp. St. § 4374), making it the duty of the United States attorneys to institute proceedings in any court having jurisdiction to naturalize aliens, for the purpose of setting aside and canceling a certificate of citizenship on the ground of fraud, or on the ground that it was illegally procured, a certificate of naturalization issued to an enemy alien during time of war may be attacked on the ground that it was issued in violation of Rev. St. § 2171; the word "illegally" meaning contrary to law.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Illegally.]

---

2. JUDGMENT ⬅470—DIRECT AND COLLATERAL ATTACK DISTINGUISHED.
   A judgment of a court that had jurisdiction of the subject-matter and the parties is impervious to collateral attack in other courts, or in the same court, though erroneous in law, but not to direct attack.

3. ALIENS ⬅71½, New, vol. 7 Key-No. Series—PROCEEDING TO CANCEL CERTIFICATE OF NATURALIZATION DIRECT ATTACK ON JUDGMENT.
   The procedure prescribed by Naturalization Act June 29, 1906, § 15 (Comp. St. § 4374), for attack on a certificate of naturalization on the ground that it was procured by fraud, or illegally issued, is a direct, and not a collateral, attack.

4. ALIENS ⬅71½, New, vol. 7 Key-No. Series—ATTACK ON CERTIFICATE OF NATURALIZATION ISSUED BY STATE COURT; PROTECTION OF STATE SOVEREIGNTY.
   The naturalization of aliens is exclusively a federal function, though Congress allows state tribunals to issue certificates; hence, as Naturalization Act June 29, 1906, § 15 (Comp. St. § 4374), providing for cancellation of certificates of naturalization procured through fraud or illegally issued, places states and federal courts on a parity, one to whom was issued a certificate of naturalization by a state court, though he then was an enemy alien, cannot defeat proceedings in the federal court to cancel the certificate on the ground that the proceeding encroached on state sovereignty.

5. CONSTITUTIONAL LAW ⬅74—VALIDITY OF PROVISIONS FOR ATTACKING CERTIFICATE OF NATURALIZATION.
   As Congress may properly commit to the federal courts the judicial inquiry whether an administrative act has been legally performed, Naturalization Act 1906, § 15 (Comp. St. § 4374), providing for proceedings to cancel certificate of naturalization procured illegally or through fraud, is valid, inasmuch as the issuance of a naturalization certificate may be deemed an ex parte matter of essentially an administrative nature.

6. STATUTES ⬅158—REPEALS BY IMPLICATION.
   Repeals by implication are not favored.

7. ALIENS ⬅61—ENEMY ALIEN NOT ENTITLED TO NATURALIZATION THOUGH HIS APPLICATION WAS FILED BEFORE WAR.
   In view of the history of legislation, Rev. St. § 2171, declaring that no alien, who is a native citizen, or subject, or denizen of any country, state, or sovereignty with which, the United States are at war at the time of his application, shall be then admitted to citizenship, an alien, who filed a petition prior to declaration of war between the United States and the country of which he was a subject, cannot be admitted to citizenship after declaration of war, on the theory that the Naturalization Act of 1906, requiring 90 days' notice before hearing, changed the law.

Appeal from the District Court of the United States for the Eastern District of Wisconsin; Ferdinand A. Geiger, Judge.

Proceeding by the United States against Henry Tador Grahl. From a decree canceling defendant's certificate of naturalization (247 Fed. 968), defendant appeals. Affirmed.

John F. Kluwin, of Oshkosh, Wis., for appellant.

H. A. Sawyer, of Milwaukee, Wis., for the United States.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

BAKER, Circuit Judge. Appellant in February, 1917, was a German subject when he filed in the circuit court of Fond du Lac county, Wis., his petition to be admitted to United States citizenship. Our government's declaration of war with Germany on April 6, 1917, gave

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

appellant the status of an alien enemy. In May, 1917, his petition came on for hearing, after the requisite 90 days' notice, and a representative of the Bureau of Naturalization objected on the sole ground that section 2171 of the Revised Statutes was a bar to the proceeding. The objection was overruled and a certificate of citizenship was issued.

In July, 1917, the United States by its proper attorney began this proceeding to cancel appellant's certificate of citizenship in the United States District Court in the district of appellant's residence.

Appellant assails the decree of cancellation on two grounds:

[1-3] I. That the District Court of the United States was without authority to nullify the judgment of the circuit court of Wisconsin simply by reason of a divergence of views respecting the proper construction of section 2171.

Section 15 of the Naturalization Act of June 29, 1906 (34 Stat. 601, c. 3592 [Comp. St. § 4374]), makes it the duty of United States district attorneys to institute proceedings in any court having jurisdiction to naturalize aliens in the judicial district in which the naturalized citizen may reside at the time of the bringing of the suit, for the purpose of setting aside and canceling the certificate of citizenship, "on the ground of fraud or on the ground that such certificate of citizenship was illegally procured."

Did the government's allegation that appellant's certificate was "illegally procured" because it resulted from a misconstruction of section 2171, give the court below jurisdiction to consider and decide? Many citations are adduced by the parties,[1] but we shall only state briefly our reasons for giving an affirmative answer.

"Illegally" means "contrary to law." If section 2171 in truth forbids the admission of alien enemies to citizenship, the action of the court in admitting them is contrary to law; and the decree of the court, based on a misconstruction of the statute involves an error of law, for which the decree should be vacated. And if a court's misconstruction or misapplication of the naturalization statute with respect to the requirement of a hearing in open court (Ginsberg Case, 243 U. S.

---

[1] By appellant: 2 Corpus Juris, 1126; United States v. Lenore (D. C.) 207 Fed. 865; United States v. Stoller (D. C.) 180 Fed. 910; United States v. Jorgenson (D. C.) 241 Fed. 412; United States v. Luria (D. C.) 184 Fed. 643; United States v. Butikofer (D. C.) 228 Fed. 918; United States v. Anderson (D. C.) 169 Fed. 201.

By appellee: Johannessen v. United States, 225 U. S. 227, 32 Sup. Ct. 613, 56 L. Ed. 1066; Luria v. United States, 231 U. S. 9, 34 Sup. Ct. 10, 58 L. Ed. 101; United States v. Ginsberg, 243 U. S. 472, 37 Sup. Ct. 422, 61 L. Ed. 853; United States v. Ness, 245 U. S. 319, 38 Sup. Ct. 118, 62 L. Ed. 321; United States v. Kolodner, 204 Fed. 241, 124 C. C. A. 1 (C. C. A. 3d Cir.); United States v. Mulvey, 232 Fed. 513, 146 C. C. A. 471 (C. C. A. 2d Cir.); United States v. Cantini, 212 Fed. 926, 129 C. C. A. 445 (C. C. A. 3d Cir.); United States v. Schurr (D. C.) 163 Fed. 648; United States v. Van Der Molen (D. C.) 163 Fed. 650; United States v. Nisbet (D. C.) 168 Fed. 1005; United States v. Simon (C. C.) 170 Fed. 680; United States v. Mansour (D. C.) 170 Fed. 671; United States v. Meyer (D. C.) 170 Fed. 983; United States v. Plaistow (D. C.) 189 Fed. 1006; United States v. Nopoulos (D. C.) 225 Fed. 656; United States v. Leles (D. C.) 236 Fed. 784; United States v. Griminger (D. C.) 236 Fed. 285; United States v. Leles (D. C.) 227 Fed. 189.

472,·37 Sup. Ct. 422, 61 L. Ed. 853), or the requirement that the Department of Commerce and Labor's certificate of entry be filed with the clerk (Ness Case, 245 U. S. 319, 38 Sup. Ct. 118, 62 L. Ed. 321) is an error of law that vitiates the decree and certificate of admission, certainly a misconstruction or misapplication of the statute on an alien enemy's having any right at all to admission to citizenship is a vital error.

A court that has jurisdiction of a stated subject-matter and has the necessary parties before it is empowered to act honestly upon a mistaken view of the law as fully as upon a correct view; and its judgment, though based on errors of law, is impervious to collateral attack in other courts or in the same court, but not to direct attack. Direct attacks, through motions for rehearing, bills of review, and appeals, are usual and of old-time familiarity. Procedure under section 15 is new and unusual. But none the less it is plainly a direct attack.

Picturing our dual form of government, state sovereignty over exclusively state matters, national sovereignty over exclusively national matters, zones of concurrent jurisdiction, and the necessity that each sovereign should respect the dignity, rights, functions, and offices of the other, appellant contends (and some of his citations support his urge) that Congress could not have meant to set up the federal courts as reviewing tribunals over the state courts.

So far as Congress had the power, it placed the two kinds of courts on an equality. By the terms of section 15 (in connection with other provisions of the act of 1906) one federal trial court may review the grant of a citizenship certificate of another federal trial court or of a state trial court, and one state trial court may review the grant of another state trial court or of a federal trial court. No discrimination was made.

But naturalization of aliens, like exclusion or deportation, is exclusively a federal function. So what Congress really did was to tender to the state court a power of attorney to exercise national authority, and the state court accepted and acted. But we do not know of any grant of power to Congress to force a state to use its treasury, courthouses, judges, and clerks in the administration of a purely national law, and undoubtedly a state could compel its officers to decline to act. So the state court's issuance of appellant's certificate was not a judgment of a state court, protected by the ægis of its sovereign, and the present proceeding is merely an inquiry by the United States government into the action of its own agent under a power of attorney.

If the suggestion should be made and accepted that the issuance of a naturalization certificate is an ex parte matter, of essentially an administrative nature, and not properly committed to the judiciary, manifestly appellant would not be aided in holding on to his certificate. Nor would that hypothesis affect the jurisdiction of the District Court under section 15, for Congress may properly commit to the federal courts the judicial inquiry whether an administrative act has been legally performed, as is shown in deportation and like cases.

We find no sound basis for appellant's assault upon the jurisdiction of the District Court.

[4-7] IT. That the District Court erred in its construction of section 2171.

For convenient reference we identify the several parts of that section by letters.

"(A) No alien who is a native citizen or subject, or a denizen of any country, state, or sovereignty with which the United States are at war, at the time of his application, shall be then admitted to become a citizen of the United States; (B) but persons resident within the United States, or the territories thereof, on the 18th day of June, in the year 1812, who had before that time made a declaration, according to law, of their intention to become citizens of the United States, or who were on that day entitled to become citizens without making such declaration, may be admitted to become citizens thereof, notwithstanding they were alien enemies at the time and in the manner prescribed by the laws heretofore passed on that subject; (C) nor shall anything herein contained be taken or construed to interfere with or prevent the apprehension and removal, agreeably to law, of any alien enemy at any time previous to the actual naturalization of such alien."

Part (A) was brought forward from the naturalization statute of 1802 (Act April 14, 1802, c. 28, 2 Stat. 153). Other parts of that statute, in connection with part (A), show that "application" had reference to the alien's request in open court for admission, that the court "then" acted upon his request, and that, if "then" the United States was at war with his country, his request was to be denied.

Part (B) was brought forward from an act adopted on July 30, 1813 (3 Stat. 53, c. 36), during the War of 1812. This, clearly, was an act of special grace in favor of aliens who were alien enemies during that war, and who when that war ended no longer needed the grace.

The reference in proviso (C) to the removal of an alien enemy "agreeably to law" is to Act July 6, 1798, c. 66, 1 Stat. 577 (preserved as section 4067 of the Revised Statutes [Comp. St. § 7615]) which authorized the President, whenever there is a declared war between the United States and any foreign nation, by public proclamation to make all subjects of such foreign nation, who had not been "actually naturalized," subject to apprehension and removal as "alien enemies."

Against the historical background section 2171 stands out in unmistakable meaning: (A) No alien shall be admitted to citizenship while the United States is at war with his country; (B) but British subjects who have met certain conditions may, between July 30, 1813, and the end of the War of 1812, be admitted to citizenship; (C) provided that executive control of such British subjects as alien enemies shall not be interfered with until they shall have been actually naturalized.

Part (B) was transitory. Part (A) and the general statute referred to in proviso (C) expressed the permanent policy—a policy which appellant admits has been continually in force until after the disposition of this proceeding in the District Court, unless Congress abrogated that policy in the Naturalization Act of 1906.

But that act left section 2171 standing unchanged in language. In lieu of the hearing of the alien's request in open court made at the time of the hearing, the act of 1906 provided that no hearing should be had until after a formal petition by the alien had been on file and notice given for 90 days. From this change in procedure appellant in effect argues that, if he saw that the United States was on the verge of war

with Germany, he could, by filing his petition before war was declared, acquire a vested right to a hearing during war and to a certificate, if the court should find him otherwise qualified, as fully as could an alien from a friendly country. Citations pro and con are collected in the footnote.[2]

1. The meaning given to part (A) from 1802 to 1906 should still be given, unless Congress intended, and took sufficient means to effectuate its intent, to overthrow the policy therein declared. No express repeal is found. Repeals by implication are not favored. In the procedural changes of 1906 we fail to find any necessary implication that Congress intended to give the same privileges to alien enemies as to alien friends.

2. In 1798 Congress established executive control of alien enemies. The procedural changes of 1906 that are relied on by appellant to free him from executive control do not directly even touch the subject, and yet they are counted on to force an implied repeal.

3. Under an act approved May 9, 1918 (40 Stat. 542, c. 69), certain classes of alien enemies may be admitted to citizenship during war, but hearings of their applications cannot be had without executive approval and consent; and that act, after fully covering the subject, explicitly repeals section 2171. While subsequent legislation cannot be a controlling factor in the construction of prior statutes, which must speak from their own dates, it may have value as an interpretive aid. It seems clear to us that Congress in 1918 entertained the view that the act of 1906 had not impinged upon the prior denial of citizenship to alien enemies and the prior executive control of them.

The decree is affirmed.

---

[2] By appellant: United States v. Meyer, 241 Fed. 305, 154 C. C. A. 185, Ann. Cas. 1918C, 704 (C. C. A. 2d Cir.); In re Nannanga (D. C.) 242 Fed. 737; In re Kreater (D. C.) 241 Fed. 985; In re Lindner (D. C.) 247 Fed. 138.

By appellee: In re Jonnasson (D. C.) 241 Fed. 723; In re Haas (D. C.) 242 Fed. 739; In re Naturalization of Subjects of Germany (D. C.) 242 Fed. 971; Ex parte Borchardt (D. C.) 242 Fed. 1006; In re Duus (D. C.) 245 Fed. 813.