### UNITED STATES v. AKHAY KUMAR MOZUMDAR.[*]

(District Court, S. D. California, S. D.   November 30, 1923.)

1. Aliens ⬤⇒54—Decision on conflicting evidence that alien within eligible class not subject to attack for illegality.

   The decision, on conflicting evidence, of a court having jurisdiction of the petition for naturalization by a person claiming to be within the class of eligibles, is not subject to attack as illegally procured in a proceeding under Act June 29, 1906, § 15 (Comp. St. § 4374), making it the duty of United States district attorneys to institute proceedings to cancel certificates of citizenship fraudulently. or illegally obtained.

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Decree affirmed 299 Fed. ——.

**2. Aliens ⚖➔71½—Certificate of citizenship of person belonging to ineligible.**
**class may be set aside.**
> Where an applicant for citizenship admits that he belongs to a par-
> ticular race, members of which are not eligible for naturalization, his
> certificate of citizenship may be set aside as illegally procured, in an in-
> dependent proceeding under Act June 29, 1906, § 15 (Comp. St. § 4374).

**3. Aliens ⚖➔62—High-caste Hindu held not "white person," within statute.**
> A high-caste Hindu of pure blood is not a white person within Rev. St. §
> 2169 (Comp. St. § 4358), and is therefore not eligible for citizenship.
>
> [Ed. Note.—For other definitions, see Words and Phrases, First and
> Second Series, White Person.]

**4. Aliens ⚖➔60—Naturalization may be withheld without any reason.**
> The privilege of naturalization is in the nature of a bounty, which
> the government may confer or withhold at its option, and without any
> reason whatsoever.

In Equity. Petition by the United States to cancel a certificate of
naturalization issued to Akhay Kumar Mozumdar. On motion to dis-
miss petition. Motion overruled, and decree for the United States.

Joseph C. Burke, U. S. Atty., and J. Edwin Simpson, Asst. U. S.
Atty., both of Los Angeles, Cal., for the United States.
S. G. Pandit, of Los Angeles, Cal., for defendant.

JAMES, District Judge. A petition was filed in this court by the
United States attorney, asking that cancellation be decreed of a cer-
tificate of naturalization issued to defendant on the 30th day of June,
1913, by the United States District Court of the Eastern District of
Washington. The right to maintain the proceeding is asserted under
the provisions of the act of June 29, 1906 (34 Stat. p. 601), section 15
of which declares that it shall be the duty of the United States dis-
trict attorneys in their respective districts, and in the judicial district in
which the naturalized citizen may reside at the time of the bringing
of the suit, to institute proceedings "for the purpose of setting aside
and canceling the certificate of citizenship on the ground of fraud or
on the ground that such certificate of citizenship was illegally pro-
cured." Comp. St. § 4374. The petition in its further allegations sets
forth that the certificate of naturalization of the defendant was illegally
procured, in that defendant was a "high-caste Hindu of full Indian
blood and not a white person."

The petition has attached to it a photostatic copy of the petition for
naturalization as the same was presented to the District Court for the
Eastern District of Washington. In the petition for naturalization de-
fendant set forth that he was born in Calcutta, India, and that he was
a subject of George V, king of Great Britain and Ireland. The peti-
tion here further shows that, upon the application of the defendant
being presented to the District Court in the Eastern District of Wash-
ington, objection was made by the United States Naturalization Ex-
aminer to the granting of the application, on the ground that defendant
was not eligible to citizenship in this country; that an order was made
denying the application, and that later the court granted a rehearing,
stating in the order that the sole question involved on rehearing was:

⚖➔For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"Is a Hindu a 'free white person' within the meaning of the naturalization laws of the United States?" Upon the matter being presented a second time, it is made to appear that the applicant then testified that he came from the northern part of India, that he was a high-caste Hindu of pure blood, and that "he considered himself a member of the Aryan race." Certificate of naturalization was then issued to him over the objection of the Naturalization Examiner.

[1, 2] The defendant appears and moves to dismiss the bill on the ground that facts are not stated sufficient to warrant the making of the decree prayed for. In his brief, counsel for the defendant questions the right of the district attorney to file the petition, insisting that, conceding that the District Court erred in granting the certificate of naturalization, no such "irregularity" is shown as authorizes this action to be instituted under the provisions of the statute hereinbefore referred to. He insists that, the District Court having had jurisdiction to determine the facts on the application of an alien for citizenship, its judgment may not be attacked in a separate proceeding such as has been here instituted. He carries the proposition even further by the argument that the decision of a court in a naturalization matter is conclusive as to the facts touching the qualifications of the applicant.

The validity of these contentions may be conceded to a limited extent: That is, where a petition for naturalization, by a person who claims to fall within the class of eligibles, is presented to the court having jurisdiction to hear it, the decision of the judge made upon a conflict of the evidence would not be open to review and would present no case of irregularity such as would authorize the prosecution of a proceeding like this. Where, however, the case is that the person presenting himself as an applicant for citizenship admits that he belongs to a particular race, members of which are not eligible for naturalization, then no question of conflict of evidence arises, and, upon the applicant's own petition or testimony, or both, naturalization must be denied.

In Luria v. U. S., 231 U. S. 24, 34 Sup. Ct. 10, 58 L. Ed. 101, which is among the cases cited by the defendant, the Supreme Court, considering the provisions of the section referred to, said that those provisions did not affect or disturb rights acquired through "lawful naturalization." In United States v. Nopoulos (D. C.) 225 Fed. 656, the District Judge held that the section "provides for the annulment, by appropriate judicial proceedings, of merely colorable letters of citizenship, *to which their possessors never were lawfully entitled.*" In United States v. Mulvey, 232 Fed. 513, 146 C. C. A. 471 (C. C. A. 2d) it was held that the word "illegal" meant "contrary to law." See, also, as defining the word, U. S. v. Plaistow (D. C.) 189 Fed. 1010. In Grahl v. U. S., 261 Fed. 487 (C. C. A. 7th), the court said:

"'Illegally' means 'contrary to law.' If section 2171 in truth forbids the admission of alien enemies to citizenship, the action of the court in admitting them is contrary to law, and the decree of the court, based on a misconstruction of the statute, involves an error of law, for which the decree should be vacated."

In United States v. Ginsberg, 243 U. S. 472, 37 Sup. Ct. 422, 61 L. Ed. 853, the United States brought suit in the District Court of the

Western District of Missouri to cancel a certificate of citizenship of one Ginsberg, a native of Russia. One of the grounds alleged was a lack of residence for the required time. To quote from the opinion of the Supreme Court in that case:

"No alien has the slightest right to naturalization unless all statutory requirements are complied with; and every certificate of citizenship must be treated as granted upon condition that the government may challenge it as provided in section 15 and demand its cancellation unless issued in accordance with such requirements. If procured when *prescribed qualifications have no existence in fact, it is illegally procured;* a manifest mistake by the judge cannot supply these nor render their existence nonessential."

The latter decision, made by the court of last resort, is ample authority to authorize relief to be granted in this case, assuming that lack of qualification in the applicant for naturalization appears. The cases of United States v. Lenore (D. C.) 207 Fed. 865, and United States v. Rockteschell, 208 Fed. 530, 125 C. C. A. 532 (C. C. A. 9th), which furnish some support to the defendant's position, must be considered, in the light of the Ginsberg decision, as being without weight.

[3] Coming, then, to the question as to whether it appears that the defendant, at the time he made his application for citizenship, was an ineligible person. The Supreme Court has settled that question also in a decision which is at all points applicable here. In the case of United States v. Bhagat Singh Thind, 261 U. S. 204, 43 Sup. Ct. 338, 67 L. Ed. 616, the question was certified by the Circuit Court of Appeals of the Ninth Circuit to the Supreme Court for advice, in the following terms:

"(1) Is a high-caste Hindu of full Indian blood, born at Amrit Sar, Punjab, India, a 'white person,' within the meaning of section 2169, Revised Statutes?"

The Supreme Court had, just previously, in Ozawa v. U. S., 260 U. S. 178, 43 Sup. Ct. 65, 67 L. Ed. 199, determined that a person of the Japanese race, born in Japan, was not eligible to citizenship. Referring in the Ozawa Case to the terms of the statute (section 2169, R. S. [Comp. St. § 4358]), which authorizes the admission to citizenship of aliens who are "free white persons," the court said that the color test alone was not conclusive, but that the words should be held to import a "racial and not an individual test," declaring, however, that while the words "white person" might be synonymous with the words "a person of the Caucasian race," such a conclusion did not entirely dispose of the problem, the court saying:

"Controversies have arisen and will no doubt arise again in respect of the proper classification of individuals in border line cases. The effect of the conclusion that the words 'white person' mean a Caucasian is not to establish a sharp line of demarcation between those who are entitled and those who are not entitled to naturalization, but rather a zone of more or less debatable ground outside of which, upon the one hand, are those clearly eligible, and outside of which, upon the other hand, are those clearly ineligible for citizenship."

When the Thind Case was presented later, the court reaffirmed its interpretation of the words "white person" as made in the Ozawa Case, and said that the mere ability of an applicant to establish a line of descent from a Caucasian ancestor could not conclude the inquiry, because

the word "Caucasian" was a conventional word of much flexibility. Justice Sutherland's able opinion in the Thind Case is well worth perusal, but, for the reason that brevity is a consideration here, only salient fragments will be reproduced. The opinion calls attention to the fact that, when the words "white person" were placed in the statute, they were being used by legislators as "words of common speech and not of scientific origin"; that they should still be so understood and applied; that it was impracticable and illogical to depend upon proof of a line of ancestry, having root in alleged Caucasian forefathers, as determinative of the question. And in that connection the learned justice declared:

"It may be true that the blonde Scandinavian and the brown Hindu have a common ancestor in the dim reaches of antiquity, but the average man knows perfectly well that there are unmistakable and profound differences between them to-day; and it is not impossible, if that common ancestor could be materialized in the flesh, we should discover that he was himself sufficiently differentiated from both of his descendants to preclude his racial classification with either. The question for determination is not, therefore, whether by the speculative processes of ethnological reasoning we may present a probability to the scientific mind that they have the same origin, but whether we can satisfy the common understanding that they are now the same or sufficiently the same to justify the interpreters of a statute—written in the words of common speech, for common understanding, by unscientific men—in classifying them together in the statutory category as white persons."

The court stated further that the applicant there considered claimed eligibility because of the "sole fact that he is of high-caste Hindu stock, born in Punjab, one of the extreme northwestern districts of India, and classified by certain scientific authorities as of the Caucasian or Aryan race." It was pointed out that writers on the subject of ethnology discredited the Aryan theory as a racial basis, the court saying, "The term 'Aryan' has to do with linquistic and not at all with physical characteristics," and that the word "Caucasian" was of scarce better repute; and the court concludes that "the words of familiar speech, which were used by the original framers of the law, were intended to include only the type of man whom they knew as white," that "the immigration of that day was almost exclusively from the British Isles and northwestern Europe; * * * when they extended the privilege of American citizenship to 'any alien, being a free white person,' it was these immigrants—bone of their bone and flesh of their flesh—and their kind whom they must have had affirmatively in mind;" hence that the words "free white person" were to be interpreted "in accordance with the understanding of the common man, synonymous with the word 'Caucasian' only as that word is popularly understood;" and, said the court:

"Whatever may be the speculations of the ethnologists, it does not include the body of people to whom the appellee belongs. It is a matter of familiar observation and knowledge that the physical group characteristics of the Hindus render them readily distinguishable from the various groups of persons in this country commonly recognized as white."

[4] Counsel for the defendant is inclined to be critical of this decision of the Supreme Court, unmindful evidently that an alien, when he lands on the shores of this country, comes with no right at all of any

296 F.—12

natural kind to have extended to him the privilege of citizenship. That privilege is in the nature of a bounty, which this government may confer or withhold at its option, and without the support of any reason whatsoever. By the highest authority in the land it has been determined 'that a person of the Hindu race is not eligible for citizenship. In view of that decision, upon the facts alleged in the petition here, the District Court granting the certificate of naturalization was not presented with a subject as to whose application any determination could be made, except to deny it, and the certificate of naturalization should therefore be held to have been "illegally procured."

The motion to dismiss should be overruled, and an order will be entered accordingly. Defendant may answer within five days after receiving notice of the ruling, if he so desires.