UNITED STATES v. SAKHARAM GANESH PANDIT.

SAME v. MOHAN SINGH.

(District Court, S. D. California, S. D. February 8, 1924.)

Aliens ⬅71½—Order naturalizing high-caste Hindoo may be canceled.

Where a high-caste Hindoo of full Indian blood was admitted to citizenship after a hearing to the court, notwithstanding that, under Rev. St. § 2169 (Comp. St. § 4358), such an individual is not admissible to citizenship, held, that the order of naturalization may be canceled, under Act June 29, 1906, § 15 (Comp. St. § 4374).

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Equity. Separate petitions for cancellation of an order of naturalization by the United States, opposed by Sakharam Ganesh Pandit and by Mohan Singh. On motions to dismiss each petition. Motions denied.

Joseph C. Burke, U. S. Atty., and Robert B. Camarillo and J. Edwin Simpson, Asst. U. S. Attys., all of Los Angeles, Cal.

S. G. Pandit, of Los Angeles, Cal., for defendants.

BLEDSOE, District Judge. In each of the above-entitled actions the matter before the court is a motion to dismiss the petition or complaint for the cancellation of an order of naturalization, brought under section 15 of the Naturalization Act of 1906.[1] In each case the right to a cancellation of the naturalization of the defendant is based upon the allegation, admitted by the motion to dismiss, that defendant is and was a high-caste Hindoo of full Indian blood, and as such not admissible to citizenship in the United States of America under the provisions of section 2169 of the Revised Statutes (Comp. Stat. § 4358). That such an individual is not admissible to citizenship may not now be questioned in this court. United States v. Thind, 261 U. S. 204, 43 Sup. Ct. 338, 67 L. Ed. 616.

The only question remaining is whether or not an order made admitting such person to citizenship, after full and fair consideration by the court, is an order susceptible of being canceled under and pursuant to the provisions of section 15 of the Naturalization Law of 1906 as being an instance of a certificate of citizenship "illegally procured." Much learned and technical argument has been indulged in to support the contention that, upon a full and fair hearing, where all the facts were presented to the court, where the government was represented and made opposition to the order of admission, and where no fraud was involved, the government may not, under and pursuant to the terms of said section 15, successfully seek the annulment of the citizenship granted.

The precise matter has been directly passed upon by Judge James, of this court, in two cases. United States v. Mozumdar, 296 Fed. 173, opinion filed November 30, 1923, and United States v. Mandel, Northern Division, opinion filed December 6, 1923 (memorandum decision). Reference to those opinions, the conclusions of which, supported by my own independent investigations, meet with my approval, should suffice as authority for the rulings had herein. Citing United States v. Plaistow (D. C.) 189 Fed. 1010, Grahl v. United States (C. C. A.) 261 Fed. 487, and other cases hereinafter referred to, he held that, where a petition for naturalization is presented to a court having jurisdiction to hear

[1] Act June 29, 1906, c. 3592, § 15 (Comp. St. § 4374): "It shall be the duty of the United States district attorneys for the respective districts, upon affidavit showing good cause therefor, to institute proceedings in any court having jurisdiction to naturalize aliens in the judicial district in which the naturalized citizen may reside at the time of bringing the suit, for the purpose of setting aside and canceling the certificate of citizenship on the ground of fraud or on the ground that such certificate of citizenship was illegally procured."

it, by a person claiming to fall within the class of eligibles under the law, a decision based upon a mere conflict of evidence would present no case of irregularity or illegal procurement, susceptible of cancellation under the terms of section 15. "Where, however, the case is that the person presenting himself as an applicant for citizenship admits that he belongs to a particular race, members of which are not eligible for naturalization, then no question of conflict of evidence arises, and upon the applicant's own petition or testimony, or both, naturalization must be denied." The granting of it, under the circumstances last detailed, would not effect a "lawful naturalization" (Luria v. United States, 231 U. S. 9, 24, 34 Sup. Ct. 10, 58 L. Ed. 101), and only a "lawful naturalization" is immune from attack under the terms of section 15.

On the main point, argued to the effect that the granting of citizenship to defendants hereinabove named, under the conditions obtaining, was not an illegal procurement of citizenship, it would seem that the rulings of the United States Supreme Court in United States v. Ness, 245 U. S. 325, 38 Sup. Ct. 118, 62 L. Ed. 321, and United States v. Ginsberg, 243 U. S. 472, 37 Sup. Ct. 422, 61 L. Ed. 853, and of the Circuit Court of Appeals, Second Circuit, in United States v. Mulvey, 232 Fed. 513, 146 C. C. A. 471, are conclusive, and require this court to deny the respective motions to dismiss.

It will be so ordered.