**In re MIEGEL.**

(District Court, E. D. Michigan, S. D. May 2, 1921.)

No. 3154.

1. **Aliens** ⊕⇒68—**Declaration of intention not voided by subsequent conduct.**

In the absence of any express statutory provision to that effect, and in the absence of a formal declaration by an alien withdrawing his declaration of intention to become a citizen, a declaration of intention properly made is not violated and does not become void by reason of subsequent acts or conduct on the part of the alien.

2. **Aliens** ⊕⇒62—**Claim of exemption from military service by alien enemy on ground of alienage does not prevent naturalization.**

Under Selective Service Law, §§ 2, 4 (Comp. St. 1918, §§ 2044b, 2044d), and the selective service regulations wholly excluding alien enemies from military service, an alien enemy's claim of exemption on the ground of alienage did not show that he was not attached to the principles of the Constitution and well disposed to the good order and happiness of the country as required by Naturalization Law June 29, 1906, § 4 (Comp. St. § 4352), since the mere claiming of an exemption established by law was not an act of disloyalty, and no different rule applies to alien enemies.

3. **Aliens** ⊕⇒62—**Claim of exemption from military service by declarant alien, not enemy, defeats naturalization.**

A claim of exemption from military service under the Selective Service Law by an alien, not an enemy, who had declared his intention to become

⊕⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

a citizen, and who was not entitled to the exemption claimed, indicates that he was not attached to the principles of the Constitution and not well disposed to the good order and happiness of the country, as required by Naturalization Act June 29, 1906, § 4 (Comp. St. § 4352).

Petition by Arthur M. Miegel for admission to citizenship. Petition granted.

TUTTLE, District Judge. This is a naturalization proceeding pending upon the petition of Arthur M. Miegel, an alien enemy, to be admitted to citizenship. The government objects to the granting of the petition on the ground that the act of the petitioner in claiming exemption from service in the military forces of the United States during the World War disqualifies him from becoming an American citizen. It is urged by the government in its brief that the claiming of such exemption by said petitioner—

"Violated the bona fides of his declaration of intention and constituted an abandonment of the same, and that the declaration of intention thereby became void and possessed no jurisdictional qualities sufficient to support the petition for naturalization, and by reason thereof his petition for naturalization must be dismissed."

The legal requirements governing the filing of a declaration of intention by an alien seeking citizenship are contained in the following provision of section 4 of the Act of June 29, 1906, chapter 3592, 34 Statutes at Large, 596 (Comp. St. § 4352):

"An alien may be admitted to become a citizen of the United States in the following manner and not otherwise: * * *

"First. He shall declare on oath before the clerk of any court authorized by this act to naturalize aliens, or his authorized deputy, in the district in which such alien resides, two years at least prior to his admission, and after he has reached the age of eighteen years, that it is bona fide his intention to become a citizen of the United States, and to renounce forever all allegiance and fidelity to any foreign prince, potentate, state, or sovereignty, and particularly, by name, to the prince, potentate, state or sovereignty of which the alien may be at the time a citizen or subject. And such declaration shall set forth the name, age, occupation, personal description, place of birth, last foreign residence and allegiance, the date of arrival, the name of the vessel, if any, in which he came to the United States, and the present place of residence of said alien: Provided, however, that no alien who, in conformity with the law in force at the date of his declaration, has declared his intention to become a citizen of the United States shall be required to renew such declaration."

[1] It is not contended that the declaration of intention filed by petitioner does not fully conform to the statutory requirements applicable, or that any declaration has been made by such petitioner withdrawing his intention to become an American citizen or that it is rendered void by the terms of any statute. My attention has not been called to, and I have not discovered, any statutory provision or controlling decision, or decision by any appellate court, which would warrant a holding to the effect that a declaration of intention, properly made, is "violated" or becomes "void" by reason of subsequent acts or conduct on the part of the alien in question, in the absence of a formal declaration with-

272 F.—44

drawing such intention to become a citizen, and in the absence of an express statutory provision to that effect. By making his declaration of intention, petitioner took the first step toward citizenship. There were, to be sure, several other steps to be taken before the coveted goal of citizenship could be reached, and it might be that he could not, because of failure or inability to take such other steps, attain such goal. That, however, is a wholly different consideration and one which cannot change or affect the fact that the first step had actually been taken. The statute having prescribed the requisites of this first step, and the latter having been taken in strict conformity to such statute, this court cannot hold, and thereby in effect declare, that what has, in fact and according to the undisputed public record, been done by petitioner has not been done. In re Cuny (D. C.) 269 Fed. 464. The contention, therefore, to the contrary, must be overruled.

[2] It is further urged by the government, in argument and in its brief, that when it appeared at the hearing on the petition of this alien that he had claimed exemption from such military service on the ground that he was an alien enemy, this evidence showed that petitioner—

"was not ready to aid this country and that he had not become sufficiently attached to our government to warrant the court in holding, as required by subdivision 4 of section 4 of the Naturalization Law, that for a period of five years before the date of filing the petition he had been 'attached to the principles of the Constitution of the United States,' and during the five years prior to the filing of the petition he had been 'well disposed to the good order and happiness of the same.'"

The subdivision of the Naturalization Law thus referred to is contained in section 4 of the Act of June 29, 1906, already cited, and is as follows:

"Fourth. It shall be made to appear to the satisfaction of the court admitting any alien to citizenship that immediately preceding the date of his application he has resided continuously within the United States five years at least, and within the state or territory where such court is at the time held one year at least, and that during that time he has behaved as a man of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the same. In addition to the oath of the applicant, the testimony of at least two witnesses, citizens of the United States, as to the facts of residence, moral character, and attachment to the principles of the Constitution shall be required, and the name, place of residence, and occupation of each witness shall be set forth in the record."

A preceding paragraph of the same section of the statute provides that "not less than two years nor more than seven years after he has made such declaration of intention," the alien shall file his petition for citizenship, in which, among other things, he shall swear that—

"It is his intention to become a citizen of the United States and to renounce absolutely and forever all allegiance and fidelity to any foreign prince, potentate, state, or sovereignty, and particularly by name to the prince, potentate, state or sovereignty of which he at the time of filing of his petition may be a citizen or subject."

Such sworn petition has been filed by petitioner; the statutory requirements as to his residence and good moral character have been sat-

isfied; and the government does not claim that there is any evidence of his disloyalty except the fact that he claimed this exemption from military service on the ground that he was an alien enemy. The sole question presented for consideration is whether the act of the petitioner in claiming exemption from military service in the army of the United States during the war, in itself, showed that he was not "attached to the principles of the Constitution of the United States and well disposed to the good order and happiness of the same," within the meaning of this statute, and that his petition for citizenship must therefore be denied on that ground.

The Selective Service Law, the Act of May 18, 1917, chapter 15, section 2, 40 Statutes at Large, 77 (Comp. St. 1918, § 2044b), provided that—

"Such draft as herein provided shall be based upon liability to military service of all male citizens, or male persons not alien enemies who have declared their intention to become citizens, between the ages of twenty-one and thirty years, both inclusive."

Section 4 (Comp. St. 1918, § 2044d) of the same act contained the following provision:

"The Vice President of the United States, the officers, legislative, executive, and judicial, of the United States and of the several states, territories, and the District of Columbia, regular or duly ordained ministers of religion, students who at the time of the approval of this act are preparing for the ministry in recognized theological or divinity schools, and all persons in the military and naval service of the United States shall be exempt from the selective draft herein prescribed; * * * and the President is hereby authorized to exclude or discharge from said selective draft and from the draft under the second paragraph of section one hereof, or to draft for partial military service only from those liable to draft as in this Act provided, persons of the following classes: County and municipal officials; custom-house clerks; persons employed by the United States in the transmission of the mails; artificers and workmen employed in the armories, arsenals, and navy yards of the United States, and such other persons employed in the service of the United States as the President may designate; pilots; mariners actually employed in the sea service of any citizen or merchant within the United States; persons engaged in industries, including agriculture, found to be necessary to the maintenance of the military establishment or the effective operation of the military forces or the maintenance of national interest during the emergency; those in a status with respect to persons dependent upon them for support which renders their exclusion or discharge advisable; and those found to be physically or morally deficient."

Pursuant to the authority conferred by this statute, the President of the United States promulgated selective service regulations governing the classification and selection of all persons required to register under the terms of the Selective Service Law. By these regulations, such registrants were divided into five classes. Those classified in class I were presently liable to military service; the members of class II were exempt from such service until class I should be exhausted; similarly, the members of classes III and IV were exempt until the classes preceding them, respectively, should be exhausted; while those in class V were absolutely "exempt" from draft. Section 70, Selective Service Regulations. Classes II, III, and IV included registrants supporting dependents, certain county and municipal officials, trained firemen and policemen, custom house clerks, persons employed by the United

States in transmitting the mails, mariners, persons engaged in necessary industrial or agricultural enterprises, and certain others. Rule XII of the Selective Service Regulations was as follows:

"In class V shall be placed any registrant found to be—
"(a) An officer, legislative, executive, or judicial, of the United States and of the several states, territories, and the District of Columbia.
"(b) A regular or duly ordained minister of religion.
"(c) A student who on May 18, 1917, was preparing for the ministry in a recognized theological or divinity school.
"(d) A person in the military or naval service of the United States.
"(e) An alien enemy.
"(f) A resident alien (not an alien enemy) who has not declared his intention to become a citizen of the United States, unless such non-declarant has stated in answer to the question No. 2 of series VII of his questionnaire that he does not claim exemption on the ground of his alienage, in which case he shall be classified as though he were a citizen of the United States.
"(g) A person found, in accordance with these regulations, to be totally and permanently physically or mentally unfit for military service.
"(h) A person shown to have been convicted of any crime which, under the law of the jurisdiction of its commission, is treason, felony, or an infamous crime.
"(i) A licensed pilot actually employed in the pursuit of his vocation."

Note 4 to said rule XII was in the following language:

"No alien enemy residing in the United States, whether he has taken out his first papers or not, will be accepted for service. When, in the opinion of a local board, any person to be classified as an alien enemy, whether he has or has not declared his intention to become a citizen of the United States, or whether he, or some other person in respect of him, has or has not indicated a claim of exemption, he shall be placed in class V."

The note to rule XXVII of said regulations recited that—

"Local boards will be held strictly responsible that no alien enemy is placed in any class other than class V."

The question whether an enemy alien, by claiming the exemption from military service established by law, thereby indicated such disloyalty to the United States as to deprive him of the privilege of American citizenship, includes and involves one, and perhaps two, entirely separate and distinct questions. The first of these may be stated as follows: Is the mere act of claiming a legally created exemption from military service, inherently and of itself, aside entirely from the nature of the particular ground for such exemption, an act of disloyalty? If this question be answered in the affirmative it follows that the petition should be denied, without reference to the result of further consideration of the subject. If, however, such question be answered in the negative, the phase of the question still to be considered is: Does the mere assertion by an enemy alien of the fact of his status, as the basis for legal procedure depending upon and resulting, as a matter of law, from such status, in itself show disloyalty?

Bearing in mind, then, the broad question involved and the separate component phases and parts thereof just referred to, I proceed to a consideration of the one first mentioned.

It must be remembered that, as indicated by the provisions of the statute and regulations to which reference has been made, the nation

had, by law and through its proper representatives, thus decided and announced that in selecting men for military service certain classes, including both citizens and aliens, were not to be drafted; that is, taken for service in the army. It is, of course, obvious that the purpose of the government in thus selecting from the available male inhabitants of the country certain specified classes for such military service was not to bestow any special privilege upon the members of any particular class, but solely to provide for the nation the greatest possible protection and benefit. The legislative history of the draft statute, referred to in the selective service regulations as the "Selective Service Law," shows that this principle of selective service, or conscription, was under consideration and discussion for a considerable period of time before it was finally embodied in the statute mentioned, and that it was the intention of Congress, and the purpose of the statute, to call to the army those who could best serve our country by performing military service, and to "exempt"—that is, exclude—from the military forces those whose absence from the army would result in greater public benefit than would their presence therein.

The reasons for the different "exemptions" differed with the various classes exempted, but there can be no doubt that in each instance the particular exemption was based upon considerations of the public welfare and not of any private interest. It is, for example, clear that the exemption of certain classes of persons, as, for example, ministers of religion and officers of the United States and of the several states, was based upon the ground, and prompted solely by the opinion and decision, that they could render more valuable aid and service to the republic by serving in their respective capacities than as soldiers. On the other hand, it is manifest that the exemption of other classes, such, for instance, as the physically unfit and alien enemies, was based upon the judgment and belief of Congress that the members of such classes would weaken rather than strengthen the effectiveness and morale of the military forces. In each case it is plain that the object of the exemption is to exclude from the army a class of men as to whom there were good grounds for believing that it was desirable, in the interest of the public welfare, to so exempt them.

Under these circumstances, is there justification for the inference, or warrant for the assumption, that the act of a person thus exempted, in claiming the "exemption" established by law, was prompted by his desire to avoid military service or by any other unpatriotic motive? If, for example, a minister of religion or a United States Naturalization Examiner claimed the exemption imposed upon him by law, must it not be presumed, in the absence of evidence to the contrary, that the making of such claim was actuated by the belief that thereby more valuable service could be rendered to the country than would result from an attempt to insist upon the privilege of going to the front with the colors? To ask these questions is, it seems to me, to answer them. The law is fair and just enough to ascribe to men, in their acts and conduct, proper rather than improper motives, and the performance, rather than the neglect, of duty. This court should and will presume,

until the contrary has been shown, that those who claimed the exemption to which they were subject under the Selective Service Law and the regulations thereunder, did so with a desire to help, rather than harm, the nation in its time of need, and it will be presumed that they either shared the belief of the government, in creating the exemption, that their proper place was outside of the military forces, or else accepted and conformed to the decision on this point already deliberately and formally made for them by the nation, relying upon the wisdom of such decision. The man who was so unfortunate as to be exempt because some physical ailment made it necessary to the public welfare that he be deprived of the opportunity to serve his country in the field, and who complied with the obligation, moral, if not legal, of claiming the exemption to which he was subject, should not, and will not by this court, unless so directed by superior authority, be branded as a slacker or declared unfit for American citizenship.

Similar considerations apply, in my opinion, to the case of an alien enemy. Congress, in providing for the creation of the military forces, on the principle of selective conscription, had expressly omitted him from the operation of such conscription. The selective service regulations had positively enjoined upon the draft officials, as a strict duty, the necessity of seeing that no alien enemy should be accepted into the army, regardless of his own wishes. Good reasons for this rule and policy readily suggest themselves. It was by no means certain that an alien enemy would be as valuable a soldier as an American citizen. However loyal he might be to this country, there was always the danger that he might not be able wholly to free himself from his legal status as an enemy, or from the ties of blood, if not of memory, which, even unconsciously or against his own will, might impair his effectiveness in hand to hand conflict with former friends, perhaps close kin. The possibility that he might be treated by the enemy, in the event of capture, as a traitor or spy, instead of an ordinary prisoner of war, might tend to reduce his fighting efficiency. Unwillingness on the part of citizen soldiers to march and fight, by day and night, shoulder to shoulder with alien enemies in the American army, might injure the morale of our army, so necessary to victory.

These and other considerations that might be mentioned make the conclusion, in my opinion, irresistible that the basis of the refusal of the government to allow alien enemies to enter the military service was concern for the public welfare, and no desire or purpose to grant a personal privilege to the alien, who, on the contrary, like every other man exempt, was thereby deprived of the precious privilege of bearing arms in the defense of our beloved country. Whether or not the judgment of Congress in this respect was correct, and its policy wise, as I believe it was, are questions wholly immaterial. Right or wrong, this judgment and policy were embodied in the law, and thereafter that law was not subject to question, or open to disobedience, by either aliens or citizens. It seems plain, then, that the mere act of claiming an exemption from military service which has been established by law is not, in itself, an act of disloyalty. In other words, there is nothing inherently wrong or unpatriotic in claiming such an exemption.

I pass, therefore, to the remaining question: Does the fact that the particular ground for the legal exemption claimed by petitioner was his alienage, instead of some other legal ground, make improper and disloyal, as to him, the same kind of act which, if done by an American citizen, would have been proper and patriotic? The status of an alien brings to him, as a matter of law, various incidents to which others are not subject. He may, for example, because he is an alien, commence certain actions in this court which he could not otherwise institute here. To do so, however, he must assert his alienage; that is, claim his status as an alien and the incidents based on and resulting from the same. It certainly could not be seriously contended that the assertion of such a claim indicated any disloyalty, in act or in thought, to this country. The law of the land having made alienage a ground for certain procedure, such alien could not properly be considered lacking in attachment to the principles of our Constitution or ill disposed to the good order and happiness of the United States and unfit for American citizenship merely because he formally stated the true facts concerning his status and followed the special procedure legally dependent thereon. Such a rule would indeed be strange and startling doctrine. If to make alienage a legal basis for peculiar remedies or rights be unpatriotic or un-American, the fault and responsibility rest upon the American citizens who make such law, not upon the aliens who follow it. I cannot avoid the conclusion that the mere assertion of his status in connection with the claim for exemption to which the law subjected him did not necessarily indicate any disloyalty to our country.

It will be a sad and ominous day for the republic when observance of any law, however its wisdom or expediency be regarded, is denounced by public officials or visited with the consequences of disloyalty. Obedience to the law is the corner stone on which our wonderful republic was built and on which it rests. The solemn and sacred duty is imposed upon this court to preserve and enforce, to the utmost of its ability, the laws of the nation, without regard to their apparent popularity or effect, and to administer, in accordance with its best judgment, and without fear or favor, equal and exact justice to the highest and lowest in the land, based not upon some of the laws or upon the laws as they ought to be, but on all of the laws, just as they have been enacted by the tribunal to which the responsibility therefor has been entrusted.

I am aware that the views and conclusions expressed by me on this subject are at variance with those reached by all of the courts whose opinions have been called to my attention or have been discovered by me. Those opinions have been examined with the care and respect due to the judges whose views are therein embodied. Notwithstanding, however, the high character of the sources of such views, I have found myself unable to concur in the conclusions there reached. I do not discover that this subject has been passed upon or considered by any Circuit Court of Appeals, or other appellate court, and with due deference to the undoubted wisdom and ability of the District Judges who have ruled adversely to the result reached by me, I am unable to

concur in their reasoning. Thus, in the case of In re Silberschutz, 269 Fed. 398, it was held that a claim of exemption from the military forces of the United States by an enemy alien negatives the bona fides of a declaration of intention and invalidates such declaration, and also that the making of such claim shows that he was not willing to defend this country from its enemies. The same conclusions were reached in the case of In re Tomarchio, 269 Fed. 400. These are the only reported cases of which I know involving this question, but a number of other unreported opinions to the same effect have been examined. All of the grounds on which these decisions were based have been hereinbefore discussed or referred to, but, for the reasons which I have attempted to explain, they are in my opinion erroneous.

[3] It should be, and I assume is, unnecessary to point out that the views and conclusions herein expressed are not applicable to declarant aliens who were not alien enemies, and who therefore were not excluded from service in the military forces of the United States, but who nevertheless claimed to be exempt under the Selective Service Law. Not only were such aliens free to avail themselves of the opportunity and right to take their places among the ranks of the military defenders of this country, but it was their solemn duty, under the law and according to all of the dictates of patriotism, to respond to the call of the nation, in its great emergency, to take up arms in its defense. No argument is required to make it clear and obvious that an American citizen who is unwilling to fight for his country, at whatever sacrifice to himself, is unfit to be an American citizen. If such a citizen, not being exempt from military service, claimed to be so exempt, the inference to be drawn from his conduct would, manifestly, be at least that he desired to avoid such military service, and perhaps, also, that he was so unwilling to render such service that he was willing to make a false claim as to his status under the law, in order to escape from the army. In either event he does not deserve to be a citizen of this country. He has been subjected to the acid test of loyalty to the United States of America and has been found disloyal. He lacks the first requisites of American citizenship.

All this is applicable, with equal force, to the alien who, having solemnly declared his intention to become a citizen of this country, and having been granted an opportunity, and indeed required, to fulfill the most important and essential obligation that a citizen or prospective citizen owes to the nation when summoned to defend it from its enemies on the field of battle, fails in this supreme test of loyalty, and not only attempts to escape from such obligation, but to present a false pretext for such attempted escape. That such an alien is not attached to the principles of the Constitution of the United States, and is not well disposed to the good order and happiness of the same, is too plain for further discussion. An alien seeking citizenship, who thus shows that he is not willing to assume and bear the duties and obligations of that status, as well as to enjoy its rights and privileges, is not qualified or entitled to become an American citizen. Luria v. United States, 231 U. S. 9, 34 Sup. Ct. 10, 58 L. Ed. 101. While it is perhaps

unnecessary, for the purposes of the present case, to thus distinguish between the status of alien enemies and of other aliens who have declared their intention to become American citizens, yet I deem it not amiss, to avoid possible misunderstanding as to the scope and effect of the decision herein reached, as well as of the reasons on which such decision is based, to emphasize what appears to me to be the true distinction to be drawn between these two classes of aliens, in respect to the proper relation between their claims for exemption from military service and their petitions to be admitted to American citizenship. One was by law barred from military service, while the other by the same law was required to render such service. It is plain that the claim which was obedience and loyalty for the one was disobedience and disloyalty for the other.

For the reasons stated, the petition herein must be granted, and an order will be entered accordingly.