## UNITED STATES v. SIEM.

(Circuit Court of Appeals, Ninth Circuit. June 30, 1924.)

No. 4182.

1. **Aliens ☞71½—Claiming exemption from draft held not to require cancellation of certificate of citizenship.**

That an alien, who had declared his intention to become a citizen, and who was a native of Norway, claimed exemption from the Selective Draft Law of May 18, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 2044a–2044k), on the ground of alienage, *held* not to require cancellation of his certificate of citizenship.

2. **International law ☞1—Treaties ☞7—International law not binding on Congress; treaties stand no higher than federal statutes.**

International law is not binding on Congress, and treaties stand on no higher plane than federal statutes.

Appeal from the District Court of the United States for the District of Montana; George M. Bourquin, Judge.

Petition by the United States to set aside a certificate of citizenship granted to Lasse Antonsen Siem. From a judgment denying the petition, petitioner appeals. Affirmed.

See, also, 284 Fed. 868.

John L. Slattery, U. S. Atty., and Ronald Higgins, and Wellington H. Meigs, Asst. U. S. Attys., all of Helena, Mont., and M. R. Bevington, Chief Naturalization Examiner, of San Francisco, Cal., for the United States.

H. A. Tyvand, of Butte, Mont., for appellee.

Before GILBERT, ROSS, and RUDKIN, Circuit Judges.

GILBERT, Circuit Judge. [1] The appeal in this case brings under review the judgment of the court below denying the appellant's petition to set aside, in a direct attack under section 15 of the Naturalization Act (Comp. St. § 4373), the certificate of citizenship granted to the appellee on November 27, 1922. On or about June 26, 1914, the appellee, then a citizen of Norway, declared his intention to become a citizen of the United States. In the draft of 1917 he claimed exemption on account of dependents, alienage, and physical unfitness. He was classified A–1, was called, examined, and rejected as physically unfit. He worked in the copper mines throughout the war. To his application for admission to citizenship the United States appeared in opposition. It is alleged in the complaint that the certificate of citizenship was procured by fraud, illegally, and contrary to the laws of the United States. The specification of fraud and illegality so charged is that, because of the appellee's claim of exemption from military service of the United States, and because of his unwillingness to return to his native country and enter its military service during the World War, he was not, during all of the five years immediately preceding the date of his petition for naturalization, a person attached to the principles of the Constitution of the United States, or well disposed to the good order and happiness of

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the same, and therefore did not possess the qualifications prescribed by the laws of the United States relative to the naturalization of aliens. The court below dismissed the complaint.

In United States v. Ginsberg, 243 U. S. 472, 37 Sup. Ct. 422, 61 L. Ed. 853, the Supreme Court said that, if naturalization is "procured when prescribed qualifications have no existence in fact, it is illegally procured; a manifest mistake by the judge cannot supply these, nor render their existence nonessential." And in United States v. Ness, 245 U. S. 319, 38 Sup. Ct. 118, 62 L. Ed. 321, it was held that a decision of a court in naturalization proceedings, so far as it concerns irregularities of procedure, competency, or weight of evidence, or credibility of witnesses, is conclusive, if the United States appeared in the proceeding. In the present case no showing is made of fraud on the part of the appellee, but it is contended that his certificate of citizenship was "illegally" procured. It has been held in a number of cases, among which are United States v. Luria (D. C.) 184 Fed. 643, and United States v. Lenore (D. C.) 207 Fed. 865, that "illegally procured" implies willful misconduct, and not error of law. But the weight of authority seems to be that "illegally procured" means procured contrary to the provisions of the law. Grahl v. United States (C. C. A.) 261 Fed. 487; United States v. Mulvey, 232 Fed. 513, 146 C. C. A. 471; United States v. Koopmans (D. C.) 290 Fed. 545. Accepting that meaning as applicable to the present case, the controlling question is whether or not the action of the appellee in claiming his exemption from military service of the United States during the World War was such evidence of absence of friendly attitude toward the United States during the period between his declaration of intention and his admission to citizenship as to show conclusively that he lacked one of the legal qualifications for admission to citizenship, so that this court is bound to set aside the decision of the court below in dismissing the complaint.

[2] The Selective Draft Law of May 18, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 2044a-2044k) subjected to draft for military service all resident aliens of the prescribed age who had declared their intention to become citizens of the United States. We make no question of the power of Congress to enact that law, for neither existing treaties nor international law could divest Congress of the power, if it chose to exercise it, of requiring military service of such resident aliens, as international law is not in itself binding upon Congress, and treaties stand upon no higher plane than statutes of the United States. Cases are cited in which it has been held that the claim of exemption from military service by applicants for admission to citizenship was evidence of such unfriendly attitude to the principles of the government and its institutions as to justify denial of citizenship, and without doubt it is proper to inquire of an applicant for citizenship what was his attitude as to military service for the United States during the World War. We have held that perjury is predicable upon willfully false answers to such questions. Hauge v. United States, 276 Fed. 111. But we find no ground for holding that such claim of exemption absolutely proves that the applicant's declaration of intention to become a citizen is made mala fide, or that he is not well disposed to

the good order and happiness of the United States, or not attached to the principles of the Constitution. In other words, we are not convinced that the mere fact that the applicant has claimed exemption from military service is sufficient in itself, as a matter of law, to require the cancellation of his certificate of citizenship, regularly granted upon a hearing as to his qualifications under the Naturalization Law.

The judgment is affirmed.

ROSS, Circuit Judge. I concur in the result. Section 4 of the Act of July 9, 1918 (40 Stat. 885 [Comp. St. Ann. Supp. 1919, § 10563e]), and section 1 of the Act of August 31, 1918 (40 Stat. 955 [Comp. St. Ann. Supp. 1919, § 2044b]), provide: that an alien may be relieved from military service by withdrawing his declaration of intention, in which event he is forever barred from becoming a citizen of the United States. If Congress intended that the same result should follow from the mere claim of an exemption given by law, it would have so declared.