### In re AHMED HASSAN.
### No. 162148.

District Court, E. D. Michigan, S. D.

Dec. 15, 1942.

Ahmed Hassan, of Detroit, Mich., in pro. per.

C. R. Berg, Naturalization Examiner, of Detroit, Mich., for the Government.

TUTTLE, District Judge.

Petitioner is an Arab, being a native of Yemen, located in the southwestern part of the Arabian peninsula. Petitioner was before the court and his skin was undisputedly dark brown in color. The issue here presented is whether petitioner is a "white person" within the meaning of the provisions of the Nationality Code enumerating the classes of people who are eligible for citizenship in the United States. 8 U.S.C.A. § 703. Affidavits filed by petitioner and one other person state that the extremely dark complexion of petitioner's skin is typical of a majority of the Arabians from the region from which he comes, which fact is attributed to the intense heat

and the blazing sun of that area. Petitioner claims that, as has been established by ethnologists, the Arabs are remote descendants of and therefore members of the Caucasian or white race, and that he is therefore eligible for citizenship.

 The decisions of the Supreme Court in United States v. Bhagat Singh Thind, 261 U.S. 204, 43 S.Ct. 338, 67 L.Ed. 616; and Ozawa v. United States, 260 U.S. 178, 43 S.Ct. 65, 67 L.Ed. 199, interpreting the statute in question, control the result here. In those cases, the court held that the statute imported a racial rather than an individual test, the actual color of the skin of the particular individual not being decisive; that the phrase "white person" was generally synonymous with that of a member of the Caucasian race, as popularly understood; and that scientific or ethnological classifications of races were not significant in the application of the act. In the Thind case, the court pointed out that the framers of the statute in employing the term "white persons" had primarily in mind European peoples, who constituted the class from which virtually all of the immigration to this country had come and who readily became assimilated into our civilization. It accordingly held that the petitioner therein, a high caste Hindu, who claimed to be of Caucasian race from a scientific classification based upon remote ancestry, was not eligible for citizenship. The court indicated serious doubt as to whether any peoples of Asiatic stock could be considered white persons within the meaning of the statute, but left open for future determination the question of whether some Asiatics might be so closely related to Europeans as to be eligible for citizenship.

It appears that the status of an Arabian under the act has not been definitely settled by the courts. The decision of this court in United States v. Ali, 7 F.2d 728, is not precisely in point, because the defendant Ali in that case at the time he was admitted to citizenship claimed to be a high caste Hindu, but later in the proceedings to cancel his citizenship claimed that although he was a native of India he was an Arabian of Arabian blood from remote ancestry.

 Consideration of the question leads to the conclusion that petitioner is not eligible for citizenship in the United States. The court is of the opinion that when one seeking citizenship is in fact clearly not white of skin a strong burden of proof devolves upon him to establish that he is a white person within the meaning of the act. It would appear that petitioner's skin is of somewhat darker complexion than that of many Arabs. However, this court does not rest its decision on that ground, but rather upon the ground that Arabs as a class are not white and therefore not eligible for citizenship. In view of the evident intent of Congress, as interpreted by the Supreme Court in the Thind case, supra, the court should be presented with a convincing case before it holds a person of Asiatic stock to be white. Apart from the dark skin of the Arabs, it is well known that they are a part of the Mohammedan world and that a wide gulf separates their culture from that of the predominately Christian peoples of Europe. It cannot be expected that as a class they would readily intermarry with our population and be assimilated into our civilization. The small amount of immigration of these peoples to the United States is in itself evidence of that fact. Arabia, moreover, is not immediately contiguous to Europe or even to the Mediterranean. It is true that most of the Arabian peninsula (including Yemen) is outside the zone from which Asiatic immigration to this country is excluded, and the Supreme Court in the Thind case pointed out that Congress could not have intended that natives from the excluded zone could become American citizens. However, it does not follow that all those outside the excluded zone are white persons under the act.

 To summarize the approach which must be followed in deciding whether a particular person applying for citizenship is a "white person" within the meaning of the statute, as interpreted by the Supreme Court, it is necessary to determine first the particular group or racial subdivision to which the individual belongs. In practical effect, proof of this fact is a matter of genealogy. An individual who presents an aberration from the color of skin of the group of which he is a member, such as a light-skinned Chinese or Japanese or a dark-skinned Anglo-Saxon, does not thereby acquire a different status under the act from other members of his group. Of course, when an individual applying for citizenship has a skin of a different color than is usual for the members of the group from which he claims to come, a strong burden of proof then rests upon him to show by the usual methods of proving genealogy that he is in fact a member

of that group. After the individual has been traced into his group, the second qestion which the court must answer is whether the members of the group as a whole are white persons as Congress understood the term in 1790 when it first enacted the statute. In deciding this latter question, the test is not how the group in question would be classified by ethnologists who have made a study of racial origins, but, rather, what groups of peoples then living in 1790 with characteristics then existing were intended by Congress to be classified as "white persons". Applying these principles the court finds that petitioner is an Arab and that Arabs are not white persons within the meaning of the act.

It is recognized that in United States v. Cartozian, D.C., 6 F.2d 919, decided subsequent to the Thind case, the District Court held an Armenian from Asia Minor eligible to citizenship as a white person. The court there found, however, that the Armenians are a Christian people living in an area close to the European border, who have intermingled and intermarried with Europeans over a period of centuries. Evidence was also presented in that case of a considerable amount of intermarriage of Armenian immigrants to the United States with other racial strains in our population. These facts serve to distinguish the case of the Armenians from that of the Arabians. This court expresses no opinion as to the eligibility of Armenians for citizenship.

The petition is denied.