Petition of KOHL.

No. 164.

Circuit Court of Appeals, Second Circuit.

Jan. 3, 1945.

Harold Epstein, of New York City (Hays, St. John, Abramson & Schulman and William Klein II, all of New York City, on the brief), for appellant.

Louis Mansdorf, Asst. U. S. Atty., of New York City (John F. X. McGohey, U. S. Atty., of New York City, on the brief), for the United States.

Before CHASE, CLARK, and FRANK, Circuit Judges.

CLARK, Circuit Judge.

Stephen Kohl, appellant herein, was born in Bayreuth, Germany, on February 17, 1909, and came to this country on September 22, 1936. He filed his declaration of intention to become a citizen on March 11, 1937, and his petition for naturalization on June 19, 1942. The District Court heard the petition in April, 1944, and immediately denied it, on the ground that appellant had failed "to establish attachment to the Constitution." This appeal followed.

The hearing below appears to have taken a curious turn. The attorney for the naturalization examiner stated that the government had no objection to the granting of the petition; and the only witness was appellant himself, who was interrogated at length by the judge. The judge, however, made no formal findings of fact, and his oral opinion indicates no subordinate facts which would seem to justify the conclusory statement, "I feel that there has been a positive effort on his part to evade military duty." True, the judge appears to have relied on certain statements concerning appellant's patriotism which appeared in the record only because they were presented orally by the naturalization attorney and which were so contradictory that the attorney himself quite satisfactorily reconciled them in appellant's favor as he presented them. The contradictions through-out the record seem almost automatically to remove the basis of objection to the grant of the petition.

Thus, against the hearsay statement attributed to one of appellant's former employers to the effect that appellant was not anxious to fight in the United States Army and was out to make money while American boys were dying, there is appellant's own testimony that the employer had told him he had given him good recommendations to the government agents who had made inquiries—verified apparently by a letter from the employer which he showed the court—and that early in 1942 he had volunteered for service, but was told that as an alien he would have to wait until he was drafted. And an apparent conflict in his statements reported by F. B. I. agents, that he was willing to serve, but, as stated on another occasion, that he desired to obtain a commission, but not to serve as a noncommissioned officer or private, was reconciled by the naturalization attorney by ascribing the second statement to the conditions under which appellant would be willing to volunteer. Had there been any thought of relying on this contradictory evidence as a basis for exclusion, the witnesses should have been produced and the contradictions resolved. Petition of Zele, 2 Cir., 127 F.2d 578; cf. Id., 2 Cir., 140 F.2d 773. But at most there seems little in it to offset other affirmative evidence. As the District Court pointed out, appellant had every reason for his profession of a desire to see the Nazi government crushed to earth in this conflict, because his father, a German soldier in World War I, had met his death by persecution in the present conflict, and his mother had been taken to Latvia by the Germans in 1942 and had not been heard from. As a matter of fact, the real basis for the judge's conclusion seems to have been certain attempts made by appellant to obtain deferment in the draft.

Appellant registered for the draft on October 16, 1940, and received his 1-A classification in the early part of 1941. As provided by law he obtained a hearing before the local draft board, at which time he advanced three grounds for reclassification: that he was married on December 18, 1940; that he was at the time contributing toward the maintenance of his mother; and that his employment at Weber & Quinn, an air conditioning firm, as a salesman on an absolute sales agreement, afforded him no guarantees as to income, so

that the loss of his sales contacts due to induction would cause him undue hardship. The local board denied his request for reclassification; but on the advice of the appeals agent he took an appeal, which resulted in his being reclassified as 3-A sometime in February or March, 1941. Subsequent to his 3-A classification, appellant was at various times classified as 4-C on account of his alien status, 3-B on account of his being engaged in essential work, and 2-B as a defense worker with Mechanical Appliances, Inc., as requested by the employer. In November, 1943, however, he was again given a 1-A classification. He reported for induction on November 30, 1943, and at the induction center filled out Form 304, which indicated that he was willing to fight for this country. But he was rejected by the army doctors on the ground of "psycho-neurosis, severe," and reclassified as 4-F.

Though this record may indicate that appellant was at least temporarily successful in obtaining deferments legitimately from his local draft board, this was entirely proper, reflects no disloyalty on his part, and cannot serve as a basis for denying his petition. In re Miegel, D.C.E.D. Mich., 272 F. 688. Indeed, it has been recently held that even an alien's request, granted by his board, to be classified as a conscientious objector for noncombat service does not bar naturalization. In re Kinloch, D.C.W.D.Wash., 53 F.Supp. 521. It should be sufficient that the alien complies with the requirements imposed by positive law. That he takes advantage of the privileges expressly accorded by that law seems no reason why the court should find him wanting in some higher standard of patriotism of the court's own devising. See Tutun v. United States, 270 U.S. 568, 578, 46 S.Ct. 425, 70 L.Ed. 738; United States v. Macintosh, 283 U.S. 605, 615–617, 51 S.Ct. 570, 75 L.Ed. 1302; Tutun v. United States, 1 Cir., 12 F.2d 763, 764; United States v. Rossler, 2 Cir., 144 F.2d 463; In re Naturalization of Aliens, etc., D.C.E.D.Wis., 1 F.2d 594, 601. The anomaly presented by the record is that, whatever may have been appellant's inner reluctance or hesitation, he actually did submit to the draft machinery, which processed him and then discarded him. What more should he have done? And had the machinery, instead of throwing him out, chanced to have turned him out as an accepted soldier, would he still be considered disaffected and unattached to the Constitution?

The order is reversed, and the District Court is directed to grant the petition.