## Petition of AJLOUNY.

### No. 216060.

District Court, E. D. Michigan, S. D.
April 23, 1948.

George Bashara, of Detroit, Mich., for petitioner.

Bernard E. Steen and Roland W. Gearing, both of Detroit, Mich., for the Immigration and Naturalization Service, United States Dept. of Justice.

LEVIN, District Judge.

The petitioner, a native and citizen of Palestine, seeks naturalization as a citizen of the United States. The Immigration and Naturalization Service opposes his petition on two grounds: (1) That he made a claim for exemption from military service as a neutral alien under the provisions of Sec. 3(a) of the Selective Training and Service Act of 1940, 50 U.S.C.A.Appendix, § 303(a), and is therefore barred from citizenship, notwithstanding the fact that he shortly thereafter withdrew his claim for exemption; and (2) That if not thus barred, he is, nevertheless, not entitled to citizenship because the filing of the claim for exemption while the United States was at war, in and of itself, makes it impossible for him to satisfy the requirements of the statute that during the required period of residence in

this country prior to the filing of his petition for naturalization he "has been and still is a person of good moral character, attached to the principles of the Constitution of the United States". 8 U.S.C.A. § 707(a) (3).

The petitioner entered the United States in 1935. He registered with a local Selective Service Board on October 16, 1940, and on November 26, 1941, was given the classification applicable to a non-declarant alien. On December 20, 1941, after this country entered the second World War, the Selective Service regulations were amended, making all male persons between the ages of twenty and forty-five years, residing in the United States and not specifically exempted from the regulations, liable for military service. On September 17, 1942, the local board reclassified the petitioner 1A, thus making him eligible for the induction process.

On September 21, 1942, he completed a form known as "Alien's Personal History and Statement", which contained a statement that he did not object to service in the Armed Forces of the United States, but that he had the exclusive obligation, with no help available ᵢfrom any other source, to support his wife, two daughters, a widowed mother and a crippled sister, all residing in Palestine. He further stated that he was doing all that he could to aid America's war effort by buying bonds and working in a defense factory.

Palestine, at that time, had been listed by the Selective Service Director as a neutral country, although subsequently, in December, 1943, he deleted it from the list of neutral countries previously furnished by him to the local boards.

The basis for one of the exemptions from military service was set forth in 50 U.S.C. A.Appendix, § 303(a): "That any citizen or subject of a neutral country shall be relieved from liability for training and service under this Act if, prior to his induction into the land or naval forces, he has made application to be relieved from such liability in the manner prescribed by * * * the President, but any person who makes such application shall thereafter be debarred from becoming a citizen of the United States."

On November 2, 1942, the petitioner, a non-declarant alien, executed the appropriate Selective Service form, known as form 301, in which he applied as a neutral alien for relief from liability for military service and he was given the classification which recognized such a status.

On February 9, 1943, while the United States was still in the bitter throes of the war[1], he voluntarily appeared before his local board and asked permission to cancel his previous claim for exemption. With the approval of his draft board and under the authority of local board memorandum 112 of the National Headquarters of Selective Service System permitting the withdrawal of such a claim for exemption if the registrant filed an application for voluntary induction, he made the following endorsement upon his form 301: "I hereby cancel and rescind my former action * * * in signing and executing this application and request that I be hereby classified in 1A and processed for induction into the military service of the United States."

He thus rescinded his former action and made another application in which he accepted the obligation to serve in the Armed Forces of the United States.

On the hearing before the naturalization examiner, he was invited to offer an explanation for his original application on form 301. His answer was, "I had a wife and two children, and with thirty dollars a month I couldn't support them because they were living in Europe. When they gave the allotment, I withdrew this claim for exemption and asked to be reclassified."

On February 25, 1943, he was again reclassified 1A, and being an alien, he was required to be processed by the Intelligence Branch of the Army in order to determine his moral qualifications. He was found "acceptable by Headquarters Sixth Service Command, Chicago, Illinois, and otherwise qualified for military service". He was submitted for induction on May 7, 1943, was found physically unfit and was given the designation 4F, the classification for those rejected for physical reasons. The report of the induction station medical officer is not available; but in response to an inquiry of the naturalization examiner, the petitioner gave as the cause for his rejection, "something they found that happened when I was young".

Under these circumstances, do the statutes of the United States inexorably command that the court deny citizenship to the petitioner?

■ Citizenship is the highest privilege which this country can bestow. The courts have repeatedly held that statutes relating to naturalization must be strictly construed, and that all doubts concerning the grant of citizenship are to be resolved in favor of the United States. Maney v. United States, 278 U.S. 17, 49 S.Ct. 15, 73 L.Ed. 156; United States v. MacIntosh, 283 U.S. 605, 51 S.Ct. 570, 75 L.Ed. 1302. But as Mr. Justice Brandeis stated in Tutun v. United States, 270 U.S. 568, 578, 46 S.Ct. 425, 427, 70 L.Ed. 738: "The opportunity to become a citizen of the United States is said to be merely a privilege, and not a right. It is true that the Constitution does not confer upon aliens the right to naturalization. But it authorizes Congress to establish a uniform rule therefor. Art. I, § 8, cl 4. The opportunity having been conferred by the Naturalization Act, there is a statutory right in the alien to submit his petition and evidence to a court, to have that tribunal pass upon them, and, if the requisite facts are established, to receive the certificate. * * * In passing upon the application the court exercises judicial judgment. It does not confer or withhold a favor."

■ In determining the applicability of Section 303(a) to the case of the petitioner, it should be pointed out that it specifically applies to a "citizen or subject of a neutral country". Was Palestine in fact a neutral country? The action of the Director of Selective Service in listing it as such did not make it so. It was governed by Great Britain as the mandatory power, and Great

---

[1] June 6, 1944, D-Day, Invasion of Normandy; December 16, 1944, Germans break through at Ardennes Forest and open counter-offensive in the Belgian Luxembourg area—Battle of the Bulge.

Britain was at war long before the registration of the petitioner with his Selective Service Board. The industrial and political life of Palestine was geared to that of Great Britain, as its mandatory, in the war effort.[2] There was no change in the relationship of Palestine to Great Britain between the date of petitioner's registration and December, 1943, when Palestine was deleted from the list of neutral countries. It follows therefore, that the petitioner's claim for exemption as a citizen of a neutral country was a nullity and without legal effect, since he was not in fact a citizen of such a country and the section could have no application in his case.

The first ground for opposition to the petition must be rejected.

It is conceded that the petitioner is a person of good morals, that he recognizes his obligations to his family and to his community, that he has been a resident of the United States for the statutory period, and that in all other respects, except for the application for exemption referred to, he is entitled to naturalization.

■ Palestine having been listed by the Selective Service Director as a neutral country, he was erroneously led to believe that he had the legal right to apply for exemption from service. That he took advantage of a privilege which the Director of Selective Service believed was expressly accorded him by law, does not stamp him as one of bad character or as one not attached to the principles of the Constitution. United States v. Siem, 9 Cir., 299 F. 582. It is clear from the record that his original claim for exemption was prompted by his family ob-ligations. When increased allotments for dependents became available, he voluntarily waived the exemption he thought he was entitled to and asked to be reclassified. This was not the action of a man seeking to evade his duty to the country which had offered him shelter.

It should be pointed out that Title 8 U.S.C.A. § 724, provides that a person who has served or is serving honorably in the Armed Forces of the United States, and meets the requirements of legal residence and good moral character, may be admitted to citizenship without awaiting the usual statutory residence period applicable generally. Can it be said that the petitioner's application for relief from service would have barred him from obtaining this benefit, after having renounced his exemption, had he been accepted and had he served honorably in the Armed Forces? Compare Petition of Kohl, 2 Cir., 146 F.2d 347. "Respect for law does not thrive on captious interpretations." Delgadillo v. Carmichael, 332 U. S. 388, 68 S.Ct. 10, 12.

The second ground for opposition to the petition likewise is untenable.

■ It seems appropriate to say in conclusion that, although the question has not been raised in this case, the court is of the opinion that an Arab, a native of Palestine, is of a race eligible for citizenship under Title 8 U.S.C.A. § 703, notwithstanding a contrary holding in this court in Re Ahmed Hassan, D. C., 48 F.Supp. 843. The later opinion in Ex Parte Mohriez, D. C., 54 F.Supp. 941, is completely persuasive on this subject.

The petition for citizenship is granted.

---

[2] United Press Dispatch from Rome, to Detroit News, Sept. 8, 1940: "A high command communique said today Italian planes had bombed the railroad between Alexandria and Marsah Matruh, Egypt, oil plants at Haifa, Palestine, and a British ship convoy in the Red Sea."

New International Year Book for 1941: "Palestine during 1940 became one of the main bastions protecting British com-munications and interests in the Near East."

Associated Press Dispatch from Jerusalem, Detroit News, Jan. 28, 1943: "In the meantime, Palestine is at war, at war on the side of the United Nations. * * * The streets and countryside are rigidly blacked out each night as thoroughly as London itself. Tel Aviv and Haifa were bombed earlier in the war."