## Petition of CRESCENZI.

District Court, S. D. New York.
June 25, 1948.

No appearances.

RIFKIND, District Judge.

The following undisputed facts were established upon the naturalization hearing:

The petitioner is a 40-year-old married male, native and national of Italy, who arrived in the United States for permanent residence on December 1, 1938, and since then has never been absent from the United States. On April 14, 1945, petitioner testified before a member of the Naturalization Service and verified an affidavit to the effect that he was not a conscientious objector, that he was willing to fight for the United States any place except in Italy, that he was willing to fight against the Japanese in the Pacific, but would not fight against Italy on Italian soil or anywhere else, and that he did not want to destroy anything Italian and did not want to kill Italian people.

In a subsequent examination by a member of the Naturalization Service, on December 11, 1946, he testified that he had never been a member of the Fascist Party either in the United States or in Italy, that he always favored an allied victory both before and after the United States entered the conflict, that his wife bought four or five hundred dollars worth of War Bonds with money he gave her, and that he owned nothing in Italy.

He confirmed the affidavit he executed on April 14, 1945, and testified that it still expressed his feelings. He reiterated that he did not want to fight against Italy or destroy anything Italian; that he was not a conscientious objector and that his refusal to bear arms against Italy was not based on religious scruples. He stated that he was willing to bear arms for the United States against any country other than Italy; that he would bear arms against Italy if he were forced to; that the reason why he would refuse to bear arms against Italy was because of his affection for that country; that he did not want to destroy anything Italian, either its property or its people; that if Italy should invade the United States, then he would bear arms for the United States. In the event of a war between the United States and Italy, he stated, he would be willing to do anything for the United States other than to bear arms, such as working in a defense factory, contribute to the war effort, and treat the sick and wounded soldiers. The reason for his refusal to bear arms against Italy, he said, was his feeling, loyalty and attachment to anything that is Italian; that it was no different from the feeling and loyalty that he had for his mother; that he did not mean that he had a greater attachment for Italy than he had for the United States but rather that his loyalty was for the United States first, and if he were naturalized and became a citizen of the United States he would be "100 per cent American."

Upon these facts, the Naturalization Service recommends that the petition for naturalization be denied on the ground that the petitioner has failed to establish that he has been attached to the principles of the Constitution and well disposed to the good order and happiness of the United States for the period required by law.

It is now settled law that the mere refusal to bear arms does not in and of itself constitute a bar to naturalization. Girouard v. United States, 1946, 328 U.S. 61, 66 S.Ct. 826, 90 L.Ed. 1084. In that case the Court said, in 328 U.S. at page 64, 66 S.Ct. at page 827, 90 L.Ed. 1084:

"The bearing of arms, important as it is, is not the only way in which our institutions may be supported and defended, even in times of great peril. Total war in its modern form dramatizes as never before the great cooperative effort necessary for victory. * * * Refusal to bear arms is not necessarily a sign of disloyalty or a lack of attachment to our institutions. One may serve his country faithfully and devotedly, though his religious scruples make it impossible for him to shoulder a rifle. Devotion to one's country can be as real and as enduring among noncombatants as among combatants. One may adhere to what he deems to be his obligation to God and yet assume all military risks to secure victory. The effort of war is indivisible; and those whose religious scruples prevent them from killing are no less patriots than those whose special traits or handicaps result in their assignment to duties far behind the fighting front. Each is making the utmost contribution according to his capacity. The fact that his role may be limited by religious convictions rather than by physical characteristics has no necessary bearing on his attachment to his country or on his willingness to support and defend it to his utmost."

In that case the applicant expressed unwillingness to bear arms against any country by reason of his religious scruples. I do not read the Court's opinion as limited by that circumstance. In the instant case the unwillingness is limited to the bearing of arms against one country, the petitioner's native land. While the scope of the petitioner's refusal is thus far more circumscribed it nevertheless poses the question whether, as the examiner stated, this reveals a "divided loyalty" so that the inference should be drawn that the petitioner has failed to establish attachment to the principles of the Constitution and his good disposition to the good order and happiness of the United States.

I do not believe that the facts in this case permit or warrant such an inference. Petitioner has expressed his willingness to take the oath of allegiance which declares "that I will support and defend the Constitution and laws of the United States of America against all enemies, foreign and domestic." He is willing to defend the United States even against Italy by methods other than the bearing of arms, and even by that method, in case of invasion. What he confesses is not an allegiance to Italy but a sentimental affection for that country and its people. Such sentiments do not establish a divided allegiance. The love of various portions of the earth's surface outside the borders of one's own country is a sentiment which has warmed the hearts of great men and small in many ages and climes.

Byron loved Greece; Lafayette loved America. Catholics look with love and reverence upon Rome. Protestants intone many hymns which express an attachment to Jerusalem. Jews pray for the restoration of Zion. In the city where this court sits one frequently hears nostalgic and affectionate reference to Ireland as the "Old Sod" by citizens whose patriotism is beyond question.

Among the many thousands who pass through this naturalization court are some who have escaped from lands of oppression, discrimination and even torture. Naturally, the ties which bind them to their native lands and people are severed. They embrace their new loyalty with gratitude and fervor. Others come from lands without such melancholy memories. It is but natural that the scenes of their childhood should exert a gentle pressure upon their hearts. The history of the United States fails to reveal any persuasive evidence that our country has suffered from the want of attachment on the part of such naturalized citizens.

 Since unwillingness to bear arms is in and of itself not a bar to naturalization and since the facts of the instant case do not, in my judgment, lead to the inference that the applicant is not attached to the principles of the Constitution or not well disposed to the good order and happiness of the United States, the petition is granted.

Out of an excess of caution I add that such a declaration of unwillingness to bear arms followed by admission to citizenship does not constitute an agreement on the part of the United States to refrain from calling upon the petitioner to bear arms against any country, including his native land.

Application granted.