**Petition of SCHMIDINGER.**

No. 1500-P-303129.

United States District Court
D. Massachusetts.
Dec. 22, 1950.

Henry Nicolls, Morris Gerrig, U. S. Naturalization Examiner, Boston, Mass., for United States.

Arthur L. Brown, Boston, Mass., for petitioner.

FORD, District Judge.

This is a petition for naturalization filed on July 27, 1949.

It is admitted that the petitioner possesses all of the qualifications for citizenship except that the government contends that he is not "attached to the principles of the Constitution of the United States and well disposed to the good order and happiness" of the same. No other ground was presented or argued by the government to support a dismissal of the petition.

No evidence was introduced by the government to indicate that, during the statutory period, July 27, 1944 to July 27, 1949, either by word or deed the petitioner in any way indicated a lack of attachment to the principles of the Constitution of the United States. On behalf of the petitioner, evidence was introduced both by the testimony of the petitioner and his employer that neither by utterance nor action did the petitioner do or say anything that would indicate a lack of attachment to the principles of the Constitution, nor commit any action that could in the slightest degree be deemed an act of disloyalty to the United States. The petitioner is not, and never has been, a member of the German-American Bund nor of any organization, associa-

tion, society or group that believes in, advises, advocates or teaches the overthrow by force or violence of the government of the United States or of all forms of law. I find that during the statutory period the conduct of the petitioner has been exemplary.

During the period from June 4, 1937 to July 27, 1944, the petitioner neither by utterance nor deed indicated that he was not attached to the principles of the United States with the exception, the government contends, of certain acts involving his registration under the Selective Service Act, 50 U.S.C.A.Appendix, § 301 et seq., his induction into the armed services of the United States, and his subsequent discharge therefrom. With respect to this period affirmative evidence was introduced by the petitioner, his employer and a clergyman, attesting to the petitioner's loyalty and attachment to the principles of the Constitution. No evidence to the contrary was introduced by the government except with respect to his conduct relating to his military service under the Selective Service law.

The petitioner, a native and national of Austria, was born in Gaisau, Austria, on April 15, 1912. After a common schooling, he entered a trade school and took courses in flower and vegetable gardening, and assisted his father, who was a farmer by occupation. Some time in 1937 through the intervention of a mutual friend of his family and one Dr. Robert Metz, he accepted an offer of the latter to emigrate to the United States and work for Dr. Metz as a farmer on the latter's estate, called "Fernbrook" situated in Lenox, Massachusetts.

The petitioner made lawful entry for permanent residence in the United States at the Port of New York City on June 4, 1937. He was met at the steamship dock by Dr. Metz and immediately thereafter both repaired to Fernbrook where the petitioner has resided continuously from that date until the present time, with the exception of the period when he was in the armed services of the United States. While at Fernbrook he was entrusted with the complete running and management of the farm, he being the only person engaged in farming there. In addition to caring for the dairy, cows, poultry and other farm animals, the petitioner raised vegetables on approximately eighty acres of land. Moreover, he also cultivated flowers, both in a conservatory and outdoors.

Prior to his entry into the United States the petitioner had become affianced to one Ella Weiss in Austria. It was his intention as well as that of his new employer that Ella Weiss should join the petitioner in this country as soon as the petitioner and his employer found their association mutually acceptable. Thereafter Dr. Metz and his late wife made many attempts, through the State Department and persons of national prominence, to secure a visa for said Ella Weiss. In the meantime, however, the armies of Hitler had marched into Austria, and at a later date Ella Weiss found herself to be an enemy alien by reason of a declaration of war.

The petitioner registered with the Alien Registration Division of the United States Department of Justice under the Alien Registration Act of 1940, 8 U.S.C.A. § 451 et seq. He likewise registered for the draft in accordance with the Selective Service law at Local Draft Board No. 82, located in Lee, Massachusetts. On March 1, 1944 he filed a Questionnaire with said Board, making no claim in said Questionnaire (under Series X, Page 6) that he had any conscientious objection to war. The statement appearing in said Questionnaire read: "By reason of religious training and belief I am conscientiously opposed to war in any form." This was not signed by the petitioner. The petitioner is a member of the Roman Catholic Church. It appears from the Alien's Personal History and Statement filed by the petitioner on May 6, 1942 that he did object to service in the land or naval forces of the United States stating that he "can humanly not fight against my brothers." Notwithstanding his objection to service as set forth in this Personal History and Statement, he was inducted into the armed services of the United States on March 30, 1944 and reported at Fort Devens.

The petitioner had been the only employee engaged in operating his benefactor's large farm. Dr. Metz tried unsuccessfully to secure a replacement. Thereafter, without any prior consultation with and without the prior knowledge of the petitioner, Dr. Metz made attempts to secure the petitioner's release from the armed services. Dr. Metz believed that the petitioner was of more benefit to the operation of the farm than he was in the armed services of the country. While certain farm employees are entitled to deferment by local boards under the Selective Service law, as a matter of fact the petitioner was not entitled to such deferment, inasmuch as the farm of Dr. Metz was not operated as a commercial venture, although certain produce from this farm was donated to certain needy families in the vicinity. See United States ex rel. Lawrence v. Commanding Officer of McCook Army Air Field, D.C., 58 F.Supp. 933, 943. I find, however, that in seeking the petitioner's release upon that ground, Dr. Metz acted in good faith.

Some time between March 30, 1944 and May 27, 1944, Dr. Metz informed the petitioner, by letter addressed to Fort Devens, of his attempts to secure his release from the armed services. He sought the intercession of a former Judge of the District Court of Lee, Massachusetts, a then Senator from Illinois, the State of his domicile, and the then senior Senator from Massachusetts. On April 22, 1944, the Director of Intelligence of the United States Army informed the Illinois Senator that if the petitioner had indicated (as he had) in his Alien's Personal History and Statement that he objected to service in the armed forces of the United States, it would appear "that he was erroneously inducted inasmuch as Army Regulations 615–500, paragraph 7e(2) (b)2, state that no enemy alien or subject of a country allied with the enemy will be accepted if he objects in writing to service in the army." On June 21, 1944 the Director of Intelligence wrote to the same Senator informing him, "It has been determined that Paul Schmidinger, a German alien, was erroneously inducted into the Army of the United States and the War Department has accordingly directed that he be discharged."

In the meantime, on May 27, 1944, the petitioner was interrogated at Fort Devens by several members of the staff of Military Intelligence. At that time the petitioner stated that he was a conscientious objector, that he did not want to fight his three brothers who were forced into the German Army by Hitler, that he felt he was essential to the conduct of Dr. Metz's farm, and that, incidentally, thought it was unfair that his fiancee was not permitted to come to the United States. By reason of these statements, it is contended by the government that the petitioner displayed that he is not attached to the principles of the Constitution.

At the hearing in this court, the petitioner expressed a general abhorrence of war and desire for peace,—a general belief in which many others join. Upon further interrogation he testified that if given a choice of incarceration in jail or induction into the armed services, he certainly would not favor incarceration. He stated that in conscience he could not fight his three brothers who had been impressed into the German army. This same statement was made by him eight years previously in his Alien's Personal History and Statement, and he adhered to the same statement in the interrogation at Fort Devens in 1944. The extent of his conscientious objection was a refusal to fight against his own brothers, impressed unwillingly into the German army. In and of itself, this does not indicate a lack of attachment to the principles of the Constitution.

The mere objection to service in the armed forces of the United States by an enemy alien does not indicate such a lack of attachment to the principles of the Constitution as to disqualify him from naturalization. Girouard v. United States, 328 U.S. 61, 64, 66 S.Ct. 826, 90 L.Ed. 1084; In re Miegel, D.C., 272 F. 688, 694; In re Naturalization of Aliens, D.C., 1 F.2d 594, 598; Petition of Scarpa, D.C., 87 F.Supp. 366-367. See also, Petition of Crescenzi, D.C., 79 F.Supp. 461.

The fact that the petitioner expressed some impatience at the delays encountered in securing the admission of his fiancee into this country does not indicate a lack of attachment to the principles of the Constitution. For approximately seven years prior to his induction into the armed services the petitioner eagerly awaited the arrival of his fiancee; indeed, after another six years, is still awaiting her arrival with the same eagerness. The petitioner's courtship became enmeshed into international matters of state and finally into war itself. These international complications overshadowed the simple, understandable and natural desire of the petitioner to have his fiancee at his side as his wife. At most, his statements in this respect indicate an attachment and devotion to his fiancee. They do not indicate a lack of attachment to the principles of the Constitution.

The petitioner was discharged from the armed services at Fort Dix on July 6, 1944 under other than honorable conditions for the following reason: "Enemy alien. Discharged because of his objection to service in the Army of the United States." I find that while in the armed services of the United States the petitioner was happy and contented and was content to remain in such service. He did not initiate any request for release from his service in the armed forces. Such request was the sole action of his employer, Dr. Metz. Indeed, the petitioner did not even know of any such attempts until long after they had been initiated by his employer.

The petitioner was grateful to his employer for having brought him to this country, provided him with a good home and a job in which he, the petitioner, found happiness. He regarded Dr. Metz as his benefactor. He was grateful to his employer and his late wife for their attempts to secure the admission of his fiancee to this country. He stood in awe of his employer. In one sense he could be considered to be under the domination of his employer; at least, the petitioner was intensely loyal to him. Accordingly, he did not oppose his employer's efforts in procuring his release. The petitioner is a peaceful, hard-working, peasant-type, industrious individual, and was willing to have decisions with respect to his military service determined by others; even after receiving his so-called blue discharge from the armed services, he indicated a willingness to continue in the armed services, although he thought that he would be more helpful at his employer's farm. I find that the petitioner reasonably could infer that, upon his discharge from the armed services, the Army had determined that he was more useful on his employer's farm than in the Army.

In the light of the foregoing, the acts and utterances of the petitioner do not demonstrate that he is not attached to the principles of the Constitution of the United States and is not well disposed to the good order and happiness of the same. Any mistake, if it is a mistake, in attempting to prevent the petitioner's induction into the armed services of the United States and to secure his release and discharge therefrom, primarily is attributable to his employer, Dr. Metz. He will make a good and loyal citizen.

### Conclusion of Law.

I find that the petitioner is attached to the principles of the Constitution and well disposed to the good order and happiness of the United States.

The petition of Paul Johann Schmidinger for naturalization, therefore, is hereby granted.